IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, et al., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | )    Case No. 4:18-CV-00128-DGK ) |
| NEXT-GEN, INC., et al., | ) ) ) |
| Defendants, | ) |

**TEMPORARY RECEIVER'S EMERGENCY ELEVENTH MOTION TO RELEASE FUNDS FROM FROZEN ASSETS AND FOR OTHER RELIEF RELATED TO ALL RECEIVERSHIP ENTITIES**

COMES NOW Temporary Receiver Eric L. Johnson ("Temporary Receiver"), by and through undersigned counsel, and moves that the Court enter an eleventh limited order increasing the Insurance Cap to $150,000 and releasing assets of the Receivership Entities to pay expenses related to employee benefit management and the Receivership Estate's compliance with federal, state, and local tax laws and regulations (the "Motion"). In support of this Motion, the Temporary Receiver states as follows:

**I.  BACKGROUND**

1. On July 17, 2018, the Court entered a Temporary Restraining Order ("TRO") appointing the Temporary Receiver as the temporary receiver for certain Corporate Defendants.[1]

---

[1] The corporate defendants in this action are Next-Gen, Inc., Westport Enterprises, Inc., Opportunities Unlimited Publications, Inc., Opportunities Management Co. ("OMC"), Summit Management Team, LLC ("Summit"), Contest America Publishers, Inc., Reveal Publications, LLC, AOSR Corporation, Lighthouse FLA Enterprises, LLC, Gamer Designs, LLC, and Montelago Marketing, Inc. (collectively, the "Corporate Defendants"). The individual defendants in this action are Kevin Brandes, William Graham, and Charles Floyd Anderson. Mr. Anderson and Montelago Marketing are not yet subject to the TRO. *See* Doc. 202. As part of the TRO, the Court froze the assets of the Corporate and Individual Defendants along with other related entities including TB2 Partners, LLC, Global Postal Solutions ("GPS"), and Global Check Recovery ("GCR"). Doc. 98. On July 23, 2018, the Receiver designated GPS and GCR a "Receivership Entity" pursuant to the TRO. Doc. 109. On September 6, 2018, the Receiver also designated TB2 a "Receivership Entity" pursuant to the TRO. Doc. 185.

WA 12366386.1

2. On September 27, 2018, the parties to this action, filed a Joint Motion to Continue the Preliminary Injunction Hearing and Suspend the Pretrial Schedule. Doc. 208. The Court granted the motion and set the Preliminary Injunction Hearing for December 13, 2018 Doc. 211.

3. On October 19, 2018, the Temporary Receiver filed his Sixth Motion to Release Funds from Frozen Assets and for other Relief Related to TB2 Partners LLC (the "Cap Motion"). Doc. 222. In the Cap Motion, the Temporary Receiver requested, among other things, authority to increase the Insurance Cap to $75,000. On October 25, 2018, the Court approved the Cap Motion. Doc. 225.

4. On December 10, 2018, this Court issued an Order granting the parties Consent Motion for Order to Continue Stay and Continue the Preliminary Injunction. Doc. 232.

5. As part of the Consent Motion, the parties disclosed they reached "a settlement in principle with all of the Defendants that would resolve this matter as to all Defendants and eliminate the need for further litigation." Doc. 231. The full terms of the settlement remain undisclosed to this Court and are subject to additional approval with the Federal Trade Commissions' five appointed Commissioners in Washington. Until the settlement is approved, the TRO tasks the Temporary Receiver with maintaining the status quo.

6. On December 22, 2018, this Court entered its most recent Order lifting the asset freeze for the Temporary Receiver to make payments subject to caps, related to Receivership Entity utilities, insurance, and other facility expenses. Doc. 240. The Insurance Cap is currently set at $110,000. Doc. 240.

7. Also, on December 22, 2018, the Federal Government entered into a partial shutdown which has impacted various entities, including the Federal Trade Commission and

potentially, the Courts (the "Shut Down"). The duration, extent, and impact of the Shut Down is currently unknown.

8. On or about December 31, 2018, the Temporary Receiver sent a letter (the "Letter") to OMC and Summit's 401(k) plan providers, Empower Retirement ("Empower") and Lincoln Financial Group ("Lincoln), respectively. The Letter informed Empower and Lincoln of the Temporary Receiver's decision to terminate the 401(k) plans and instructed Empower and Lincoln to wind down the respective plans (the "Termination Process"). Lincoln has since sent the Temporary Receiver a termination invoice for $1,191.66 (the "Lincoln Invoice"). The Temporary Receiver anticipates receiving a termination invoice from Empower as well. In addition to the administrative fees by Lincoln and Empower, the Temporary Receiver envisions there being potentially additional administrative fees related to the termination of the 401(k) plans.

9. The Receivership Entities are subject to continuing and monthly expenses subject to spending caps approved by the Court. These expenses include monthly insurance expenses in addition to other expenses to preserve receivership property. In the event of an extended Shut Down, the Temporary Receiver believes the Insurance Cap could be exhausted and the Temporary Receiver is concerned about getting the necessary spending approval from the Court to cover these expenses in addition to such other expenses that may arise.

10. In addition to expenses subject to spending caps, various federal, state, and local taxes are due or will become due shortly. Moreover, there are costs, fees, and expenses associated with keeping the Receivership Estate in compliance with federal, state, and local tax laws and regulations, including without limitation, preparing W2s, 1099s, and tax returns for multiple jurisdictions (together with any applicable tax, the "Tax Expenses"). The Tax Related

3

WA 12366386.1
Case 4:18-cv-00128-DGK   Document 244   Filed 01/17/19   Page 3 of 6

Expenses would also include paying any remaining amounts or ongoing amounts due and owing to third-party payroll providers, such as Paychex, and the Receivership Entities' pre-receivership accounting professionals including Chad Smith and Angela Parker (and their respective firms)[2] any amounts that were due and owing by the Receivership Entities prior to the filing and any additional amounts that may be necessary to complete necessary tax returns and other tax compliance matters.

11. The Temporary Receiver believes it is likely the most cost effective and efficient to consult and/or use the Receivership Entities' pre-receivership tax professionals. In light of the tax structure and given that the receivership arose mid-year, there will likely be a need for coordination with the non-receivership defendants as well regarding taxes.

## II. REQUESTED RELIEF

12. The Temporary Receiver requests an Order:

   a. Authorizing the Temporary Receiver to execute any documentation and take such actions within his business judgment related to the termination of the 401(k) Plans to the extent not already covered by the TRO or previous orders;

   b. Lifting the Asset Freeze to permit the Temporary Receiver to pay the costs, fees, and expenses associated with the Termination Process (the "Termination Process Expenses"); provided however, the Termination Process Expenses shall not exceed $25,000.00;[3]

   c. Increasing the Insurance Cap to $135,000, which is an additional $25,000 from the Court's previous Order;

   d. Authorizing the Temporary Receiver to execute any documentation and take such actions within his business judgment related to tax compliance to the extent not already covered by the TRO or previous orders;

   e. Authorizing the Temporary Receiver to employ and compensate, subject to the payment terms provided herein, tax professionals he believes in his

---

[2] Smith Accounting Solutions and Parker Swearngin, LLP
[3] For the avoidance of doubt, however, and strictly for purposes of this Motion, the Termination Process Expenses shall not include the professional fees of Spencer Fane LLP ("Spencer Fane"). Spencer Fane's fees constituting the Termination Process Expenses shall be paid pursuant to the prior and/or further orders of this Court.

        business judgment are appropriate and necessary to ensure the Receivership Estate's compliance with federal, state, and local tax laws and regulations ("Tax Professionals"). Tax Professionals shall include, without limitation, RubinBrown LLP,[4] Chad Smith, Smith Accounting Solutions, Angela Parker, Parker Swearngin, LLP, and current or former employees of the Receivership Entities;

    f.    Lifting the Asset Freeze to permit the Temporary Receiver to pay the Tax Expenses; <u>provided however</u>, the Tax Expenses shall not exceed $50,000.00, unless otherwise authorized by further order of this Court.; and

    g.    Authorizing the applicable financial institutions, at the Temporary Receiver's direction, to issue such checks, ACHs, electronic funds transfer, or such other means of payment in order to facilitate the partial lifting of the Asset Freeze as requested herein.

### III.    BASIS FOR RELIEF

13.    The TRO empowered the Receiver to manage all assets of Defendants and authorized the Receiver to "[m]ake payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by this Order." *Id.* at § XIII(F). The Receiver must apply to the Court for approval to pay any obligation incurred by the Temporary Restraining Order unless Receiver deems the payment necessary to secure the assets of Defendants. *Id.*

14.    In light of the Asset Freeze and to avoid any confusion, the Temporary Receiver requests the Order provide authorization to the applicable financial institutions, at the Temporary Receiver's direction, to help facilitate the potential future payments contemplated by this Motion.

15.    The Temporary Receiver has circulated a draft of this Motion to the parties, including the designated FTC personnel. The Temporary Receiver has received consent from all parties except for the Floyd Anderson related defendants, who at the time this motion was filed,

---

[4] The fees paid to RubinBrown would only be related to tax related expense. Other fees incurred by RubinBrown would be paid pursuant to further Order of the Court.

had not yet responded. The Temporary Receiver, however, makes this emergency request in part due to the extraordinary and potentially unknown circumstances related to the Shut Down and in light of the upcoming tax season.

WHEREFORE the Temporary Receiver moves that the Court enter an order granting the relief sought herein and for such other and further relief that the Court deems just and proper.

Dated: January 17, 2019

Respectfully submitted,

SPENCER FANE

/s/ Duvel Pierre
| Leslie Greathouse | MO #48431 |
| Bryant T. Lamer | MO #57355 |
| Duvel Pierre | MO #63162 |

1000 Walnut Street, Suite 1400
Kansas City, MO 64106
Telephone: (816) 474-8100
Facsimile: (816) 474-3216
lgreathouse@spencerfane.com
blamer@spencerfane.com
djpierre@spencerfane.com
Attorneys for Receiver Eric L. Johnson

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 17th day of January 2019, a true and correct copy of the foregoing was filed electronically with the United States District Court for the Western District of Missouri using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system.

/s/ Duvel Pierre
Attorney for Receiver Eric L. Johnson