# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, et al., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:18-CV-00128-DGK ) |
| NEXT-GEN, INC., et al., | ) ) ) |
| Defendants, | ) |

## TEMPORARY RECEIVER'S MOTION TO APPROVE (A) AUCTION PROCEDURES; (B) ONE OR MORE POTENTIAL SALE(S) OF RECEIVERSHIP PROPERTY, AND (C) RELATED PROCEDURES FOR THE DISPOSITION OF RECEIVERSHIP PROPERTY

COMES NOW Temporary Receiver Eric L. Johnson ("Temporary Receiver"), by and through undersigned counsel, and moves that the Court enter an Order to approve auction procedures, one or more sales of the Temporary Receivership assets and related asset disposition procedures. In support of this Motion, the Temporary Receiver states as follows:

## I. BACKGROUND

### A. Procedural Posture

1. On July 17, 2018, the Court entered a Temporary Restraining Order ("TRO") appointing the Temporary Receiver as the temporary receiver for certain Corporate Defendants.[1]

2. The TRO empowered the Receiver to "[t]ake exclusive custody, control, and possession of all Assets and Documents of, or in possession, custody, or under the control of, any

---

[1] The corporate defendants in this action are Next-Gen, Inc., Westport Enterprises, Inc., Opportunities Unlimited Publications, Inc., Opportunities Management Co. ("OMC"), Summit Management Team, LLC ("Summit"), Contest America Publishers, Inc., Reveal Publications, LLC, AOSR Corporation, Lighthouse FLA Enterprises, LLC, Gamer Designs, LLC, and Montelago Marketing, Inc. (collectively, the "Corporate Defendants"). The individual defendants in this action are Kevin Brandes, William Graham, and Charles Floyd Anderson. Mr. Anderson and Montelago Marketing are not yet subject to the TRO. *See* Doc. 202. As part of the TRO, the Court froze the assets of the Corporate and Individual Defendants along with other related entities including TB2 Partners, LLC, Global Postal Solutions ("GPS"), and Global Check Recovery ("GCR"). Doc. 98. On July 23, 2018, the Receiver designated GPS and GCR a "Receivership Entity" pursuant to the TRO. Doc. 109. On September 6, 2018, the Receiver also designated TB2 a "Receivership Entity" pursuant to the TRO. Doc. 185.

Receivership Entity, wherever situated." § XIII(B).

3. The TRO also required the Temporary Receiver to "[o]btain, conserve, hold manage, and prevent the loss of all Documents of the Receivership Entities, and perform all facts necessary or advisable to preserve such Documents." § XIII(D). However, the TRO is silent as to the transfer or destruction of those Documents.

4. On July 18, 2018, the Temporary Receiver secured Defendants' business premises. This included the properties located at 4-14 and 17-21 NE Skyline Drive in Lee's Summit, Missouri ("Skyline Facilities").

5. On December 10, 2018, this Court issued an Order granting the parties Consent Motion for Order to Continue Stay and Continue the Preliminary Injunction. Doc. 232. As part of the Consent Motion, the parties disclosed they reached "a settlement in principle with all of the Defendants that would resolve this matter as to all Defendants and eliminate the need for further litigation." Doc. 231. The full terms of the settlement remain subject to additional approval with the Federal Trade Commissions' five appointed Commissioners in Washington at which time the parties will present to the Court for approval. The FTC approval process has been delayed in light of the recent government shutdown. *See* Doc. 251.

6. The proposed settlement contemplates the liquidation of Receivership Entities' property and a wind-up of their affairs. Under the proposed settlement, the Receivership Entities will face increased financial responsibilities for occupying the Skyline Facilities after March 1, 2019 (depending upon when and if the proposed settlement is ultimately approved). Given the scope and amount of personal property and other items and availability of its auctioneer, the Auction is tentatively scheduled to take place in mid-March.

7. With the exception of the limited income generated by GCR, the Receivership

Entities are not operating and are not generating income. Notwithstanding the same, there are ongoing expenses that the Temporary Receiver must incur with respect to the Receivership Entities including utilities, insurance, professional expenses, and taxes. While the Temporary Receiver has attempted to aggressively manage the Temporary Receivership Estate's cash reserves, such reserves continue to be depleted with such ongoing expenses.

### B. Liquidation and/or Abandonment of Receivership Personal Property

8. On September 6, 2018, the Receiver filed his initial inventory report documenting large-scale mail storage, office, and operational equipment storage, office and operational equipment, and several vehicles located at the Skyline properties ("Receivership Personal Property"). Doc. 188 § V-VI. The Temporary Receiver supplemented this inventory of the Receivership Personal Property on October 1, 2018 and December 13, 2018. *See* Docs. 210 & 235.

9. The Receivership Entities leased certain equipment located at the Skyline Facilities (the "Leased Equipment"). The Temporary Receiver is determining whether the Leased Equipment represents true leases or are financing leases. To the extent they represent true leases, the Lease Equipment should be surrendered to the lessor immediately. Additionally, certain of the Receivership Personal Property is subject to security interests and/or liens.

10. After review of the circumstances, including the proposed settlement agreement, the Temporary Receiver believes it appropriate to begin the immediate disposal, liquidation, and storage process of the Receivership Personal Property located at the Skyline Facilities including certain vehicles. The Temporary Receiver believes this process could take an extended period, which includes sufficient marketing time for an auction of the Receivership Personal Property.

11. The Temporary Receiver has identified Robert Mayo and Mayo Auction & Realty ("Mayo") to oversee the sale of certain of the Receivership Personal Property. Mayo would

conduct the auction (the "Auction") pursuant to a set of procedures identified in the attached **Exhibit A** (the "Auction Procedures"). Mayo is located in Belton, Missouri and is frequently Court approved and employed by Chapter 7 trustees in the Western District of Missouri to conduct auctions on Chapter 7 bankruptcy estates.

12. The Temporary Receiver proposes to pay the following costs and expenses from the proceeds of the Auction:

    a. A commission to Mayo not to exceed 15% of the sale price of property sold by Mayo;

    b. Reimbursement of all reasonable out-of-pocket expenses of the Auctioneer; and

    c. Reimbursement of such other expenses as set forth in the Auction Procedures.

13. The Temporary Receiver believes the immediate appointment of Mayo to oversee the liquidation of designated Receivership Personal Property will facilitate the vacating of the Skyline Facilities, while obtaining maximum value for the Receivership Estate with the use of an experience and respected auctioneer.[2]

14. Additionally, there is certain Receivership Personal Property which could be sold separately from the Auction. For instance, the individual defendants have identified certain property that they would like to purchase from the Temporary Receiver. To the extent the proposed settlement is approved by the Court and Receivership Entity funds are not being used, the Temporary Receiver does not have an objection to selling such property to the individual defendants for a fair market price. In fact, there could be certain benefits of the individual defendants purchasing such property. For example, the Temporary Receiver will have access and use of such assets for a longer period of time if they were otherwise included in the auction.

---

[2] Even prior to this motion, in light of availability, the Temporary Receiver has been working with Mayo and his team to inspect, prepare, and catalogue the assets to be liquidated.

4

WA 12264594.2

Case 4:18-cv-00128-DGK   Document 253   Filed 02/08/19   Page 4 of 15

Before accepting the proposed purchase price, however, the Temporary Receiver will consult with the Plaintiffs and Mayo to confirm that the fairness of the price offered.

15. There is certain personal property owned by receivership entity TB2 Partners that is located at a house in Sunrise Beach, Missouri ("Lake House"). It is the Temporary Receiver's intent that such property be sold with the Lake House.

16. The Temporary Receiver shall sell the Receivership Personal Property "as-is" and "where-is," without any representations or warranties, either express or implied. Further, with respect to any drives, computers or servers, the Temporary Receiver took steps to preserve the information on such computers[3] and requests authority to take additional steps to wipe the existing data from the equipment that will be sold.

### C. Storage and Disposal of the Documents and Paper Stock

17. The Receivership Entities' had substantial paper stock, e.g., envelopes, etc. (the "Paper Stock"). The Temporary Receiver researched whether the Paper Stock should be sold at the Auction and also inquired with independent third-party paper disposal companies to determine what will bring the highest and best price under the circumstances.

18. In addition to the Receivership Personal Property and the Paper Stock, the Skyline Facilities contain hundreds of thousands of pieces of contest related correspondence and documents in addition to other corporate and financial documents that the Corporate Defendants' have retained over the course of many years (the "Documents"). Defendants claim certain of these Documents are subject to attorney-client privilege.

19. After a thorough review, the Temporary Receiver identified Midwest Shredding Services ("Midwest") to complete any document destruction and the sale of any Paper Stock *with*

---

[3] The Temporary Receiver has already imaged substantially all of the computers that were in active use when the receivership began.

5

WA 12264594.2

Case 4:18-cv-00128-DGK   Document 253   Filed 02/08/19   Page 5 of 15

printing. The Temporary Receiving received multiple bids for shredding and Paper Stock recycling from Midwest, Batliner Recycling, and ProShred Kansas City. Midwest submitted the bid with the lowest cost for shredding and the highest price for the purchase of the printed Paper Stock.

20. Although Midwest submitted the highest price for the purchase of the Paper Stock, after consultation with Mayo, the Temporary Receiver believes Auction participants will purchase Paper Stock *without* printing for an even higher price. As a result, the Temporary Receiver proposes any Paper Stock *without* printing be sold at the Auction, with Midwest purchasing any remaining Paper Stock without printing that remains after the Auction along with the printed Paper Stock.

21. The Temporary Receiver is in the process of packing up Documents located at the Skyline Facilities. The Temporary Receiver proposes to allow defendant Brandes and Graham, under supervision of their counsel, to pack up the Documents in their respective offices to avoid any unnecessary attorney-client privilege issues. The Temporary Receiver intends to implement the necessary protocols in order to secure such records.

22. The Temporary Receiver is in the process of identifying proper storage of the Documents. So far, the Temporary Receiver has packed thousands of documents in the Skyline Facilities which will require storage after the Temporary Receiver vacates those properties.

    **D.    Storage and Disposal of Computer and Server Data**

23. The Receivership Entities also maintained a multitude of computers and servers related to the operations of the Corporate Defendants. Following the entry of the Temporary Restraining Order, the Temporary Receiver retained UnitedLex to assist in the imaging and external storage of computer and server data, in addition to assistance with the maintenance of these devices.

24. During the months of August, September, and October, UnitedLex completed the successful imaging and storage of all data on the devices in possession of the Temporary Receiver.

25. As part of the Auction, the Temporary Receiver seeks approval to sell the computers and servers in his possession, except for at least one server and certain computers necessary for the operations of Global Check Recovery ("GCR") or that will need to be retained by the Receivership Estate for future needs. Currently pending before the Court, is a Motion revising GCR's operational parameters which will potentially require these computers and server to be exempted from the Auction. *See* Doc. 245.

26. To facilitate the sale of these items and protect all information related to the Corporate Defendants, the Temporary Receiver is requesting authorization to destroy all data on the computers and servers after such information has been digitally preserved. After UnitedLex imaging, the Temporary Receiver has stored and preserved this data on external devices (the "Retained Data"). The Temporary Receiver seeks approval to retain UnitedLex to wipe the data from the computers and servers, but not the Retained Data on the external devices.

27. The Temporary Receiver and UnitedLex have agreed upon a series of procedures to ensure the destruction of this data and an indexing process to document which device contained each set of data. UnitedLex will use a USB drive containing a forensic wiping tool to wipe all data and operating systems from each device. Any devices identified for wiping but cannot be accessed for wiping due to hardware failures, will be removed from the computer or server and brought back to the UnitedLex laboratory for physical destruction (punching and shredding) at the direction of the Temporary Receiver.

28. Following the destruction of the data, and if necessary the device itself, UnitedLex will issue a Certificate of Destruction Record which will detail which device was wiped or destroyed, a description of any media on that device, the method of destruction, and verification signatures from UnitedLex and the Temporary Receiver.

29. The parties and the Temporary Receiver will maintain the ability to access to all Retained Data on UnitedLex's external drives. The ultimate disposition of the Retained Data will be subject to further Court order. Similarly, the Temporary Receiver will take such steps to retain any specific software that may have more than *de mininis* value.

### E. Abandonment of Assets

30. After the sales and dispositions contemplated herein, the Temporary Receiver believes he will have administered all the material assets located at the Skyline Facilities. Any remaining assets (the "Skyline Remnant Assets") will either have inconsequential value and/or would require additional expense by the Temporary Receiver to liquidate, would delay the surrender of the Skyline Facilities, and may not yield any positive value over and above the costs of administration. As such, the Temporary Receiver believes that such Remnant Assets are likely burdensome to the Receivership Estate and should be abandoned or otherwise disposed of in a manner that will have little to no cost. As such, the Temporary Receiver seeks authority to abandon such assets and/or dispose of such assets that the Temporary Receiver believes in his business judgment to be appropriate.

WHEREFORE, for the reasons set forth herein, the Temporary Receiver moves that the Court enter an order granting the following relief:

    a. Authorizing and approving the sale of the Receivership Personal Property;

    b. Approving the Auction Procedures and employing Mayo as the Temporary Receiver's auctioneer pursuant to the terms set forth herein and in the Auction Procedures;

c. Approving the sale of all Lake House Personal Property along with the sale of the Lake House;

d. Authorizing the Temporary Receiver to retain Midwest to destroy and recycle certain designated Documents after consultation and approval by the Parties;[4]

e. Authorizing and approving the sale of Print Stock to Midwest on terms the Temporary Receiver believes in his business judgment to be appropriate;

f. Authorizing and approving the wiping or destruction of data on all computers and servers in the Temporary Receiver's possession, with an exception for the GCR servers/computers and such other computers as the Temporary Receiver believes will be necessary to the Receivership Estate;

g. Authorizing the Temporary Receiver to abandon and surrender all Receivership Entity Leased Property if he determines in his business judgment that it is in the best interest of the Receivership Estate;

h. Authorizing the Temporary Receiver to abandon and/or otherwise dispose of the Skyline Remnant Assets Receivership Entity Leased Property in a manner that the Temporary Receiver believes in his business judgment to be appropriate;

i. Granting for such other and further relief that the Court deems just and proper.

Dated: February 8, 2019

Respectfully submitted,

SPENCER FANE

/s/ Duvel Pierre
Leslie Greathouse           MO #48431
Bryant T. Lamer             MO #57355
Duvel Pierre                MO #63162
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
Telephone:      (816) 474-8100
Facsimile:      (816) 474-3216
lgreathouse@spencerfane.com
blamer@spencerfane.com
djpierre@spencerfane.com
Attorneys for Receiver Eric L. Johnson

---

[4] To the extent the Temporary Receiver cannot obtain the necessary approval, it will bring this issue back before the Court.

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on the 8th day of February 2019, a true and correct copy of the foregoing was filed electronically with the United States District Court for the Western District of Missouri using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system.

                                      /s/ Duvel Pierre
                                      Attorney for Receiver Eric L. Johnson

**Exhibit A**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| **FEDERAL TRADE COMMISSION, et al.,** ) ) ) | |
| **Plaintiff,** ) ) | |
| v. ) ) | Case No. 4:18-CV-00128-DGK |
| **NEXT-GEN, INC., et al.,** ) ) | |
| **Defendants,** ) | |

## AUCTION PROCEDURES[5]

1. **Time and Place of Auction; Assets to be Sold.** The Auction shall consist of certain designated Receivership Personal Property located the Skyline Facilities in an online auction ending on March 13, 2019 or such other date that is designated by the Temporary Receiver in consultation with the Auctioneer (the "Auction End Date")

2. **Auctioneer.** The Temporary Receiver selected Robert Mayo and Mayo Auction and Realty (the "Auctioneer") to conduct the Auction. The Auction will be conducted through the Auction Online Service, www.auctionbymayo.com. In addition to the Auction Procedures listed herein, the Auction shall be subject to the terms and conditions, attached hereto as **Exhibit A-1** (the "Terms and Conditions"). To the extent the Terms and Conditions conflict with the specific Auction Procedures set forth herein, the specific procedures will control over the Terms and Conditions.

3. **Bids**. The designated Receivership Personal Property will be sold in lots and each lot will be sold to the highest bidder subject to any reserve prices set by the Temporary Receiver in consultation with the Auctioneer. The Auctioneer may take backup bidders if the highest bidder fails to close and timely take possession of the purchased assets. All bids will be in dollar denominations. In the event there are technical difficulties related to the server, software or any other online auction-related technologies, Auctioneer will have the right to extend bidding, continue the bidding, or close the bidding. NEITHER THE COMPANY PROVIDING THE SOFTWARE NOR AUCTIONEER SHALL BE HELD RESPONSIBLE FOR A MISSED BID OR THE FAILURE OF THE SOFTWARE TO FUNCTION PROPERLY FOR ANY REASON. Email notifications will be sent to registered bidders with updated information as deemed necessary by Auctioneer. BY

---

[5] Unless otherwise defined herein, all capitalized terms shall have the same meaning as set forth the Motion to Approve (A) Auction Procedures; (B) One or More Potential Sale(s) of Receivership Assets; and (C) Related Procedures for the Disposition of Receivership Property (the "Motion").

PLACING A BID, A BIDDER SHALL BE DEEMED TO HAVE AGREED TO ALL OF THE AUCTION PROCEDURES AND WITH THE INDIVIDUAL TERMS AND CONDITIONS OF THE AUCTIONEER WHICH SHALL BE POSTED ON THE AUCTION WEBSITE.

4. **Court Reporting.** Following the completion of the Auction, the Temporary Receiver will file and serve a report of the Auction (the "Auction Report"). The Auction Report shall include the price paid for each lot, the identity of each winning bidder and back-up bidder, and the amount of sale costs and expenses including, without limitation, the Auctioneer's commission and costs of conducting the sale and the costs of securing the assets prior to and immediately after the sale (the "Sale Expenses"). Parties will have 14 days to object to the Sale Expenses.

5. **Payment.** Accepted forms of payment include Visa, MasterCard, Discover, American Express, wire transfer, cashier's check, personal check with bank letter of guarantee (over $500) or cash local check (under $500) & cash. Payment must be made to the Auctioneer prior to picking any items up. The Auctioneer's load out staff cannot accept any form of payment. All monies held by the Auctioneer shall be turned over as directed by the Temporary Receiver less any non-objected to Sale Expense.

6. **Buyers Premium**. A 10% buyer's premium will be added to the final bid on personal property and paid to the Auctioneer. Example: If buyer bids $10,000.00, the total sale price will be $11,000.00.

7. **Seller's Commission.** A 15% seller's commission will be taken from the sale of each item. Example: If buyer bids $10,000.00, the Auctioneer will take $1,500 of the sale as a commission.

8. **Cataloging.** The Auctioneer will/has employed individuals in consultation with the Temporary Receiver to catalog the personal property. Each individual would be subject to compensation of $15.00 per hour for their cataloging work. Compensation to these employees are considered Sale Expenses.

9. **Marketing Fees.** In preparation for the sale, the Auctioneer, in consultation with the Temporary Receiver, may have marketing fees related to the advertising of the sale. The Auctioneer would take these fees from the proceeds of the sale. These marketing fees would not be greater than $2,500.00.

10. **Closing and Pick-Up.**

    a. <u>Staggered/Dynamic Closing</u>. The Auction will begin closing at 7:07 pm CDT on Auction End Date, a process which will be completed prior to 11:59 pm that same evening. The closing time of each lot will be automatically extended an additional 5 minutes whenever a bid is placed within the last 5 minutes of any lot.

    b. <u>Pickup</u>. LOCAL PICKUP ONLY. Winning Bidders may pick their items up at the locations and during the load out times specified by the Auctioneer (after consultation with the Temporary Receiver). Load Out will take place within three

days of the Auction. Unless otherwise agreed to by the Temporary Receiver in advance, any items left after the specified load out date will be considered forfeited and the backup bidder will be notified. The back-up bidder shall have three (3) days from written notification to tender the purchase price. It will be the buyer's responsibility to dismantle & disconnect any and all equipment, and will be responsible for furnishing their own packing materials, labor, tools & moving equipment. Buyer shall bear the cost of transportation and removal of their purchased Receivership Personal Property and any damage caused by the same. Certain personal property may require, among other things, qualified expertise in its removal. The Auctioneer, in consultation with Temporary Receiver, may designate further parameters and requirements in the removal of personal property as the Auctioneer may determine in its business judgment. Potential Bidders may consult with the Auctioneer regarding any such parameters and requirements.

11. **Warranty and Condition of Items Sold**. All items are sold 'AS IS, WHERE IS', with NO WARRANTY expressed or implied. It is the responsibility of the buyer to determine the condition of the items and bid accordingly. Descriptions are believed to be accurate but not guaranteed.

12. **Venue & Jurisdiction of All Disputes**. Any and all disputes which may arise by virtue of the Auction or stemming from this Auction shall be resolved by the Federal District Court of the Western District of Missouri.

13. **Choice of Law**. All disputes and other matters related to the Auction shall be governed by law applicable to the Western District of Missouri and, to the extent not controlled or preempted by applicable federal laws or the laws of the State of Missouri.

## MODIFICATIONS

14. The Auctioneer, after consultation with and approval of the Temporary Receiver, shall have the right to adopt such other rules for the Auction that the Auctioneer believes in its business judgment will promote the goals of the Auction. Nothing herein shall prohibit an impacted buyer from seeking immediate Court intervention to the extent that after consultation with the Auctioneer, the buyer disagrees with the Auctioneer's proposed course of action.

**Exhibit A-1**

THIS IS AN INTERNET AUCTION ONLY

Any condition statement is given as a courtesy to a client, is only an opinion and should not be treated as a statement of fact. Mayo Auction & Realty shall have no responsibility for any error or omission. The absence of a condition statement does not imply that the lot is in perfect condition or completely free from wear and tear, imperfections or the effects of aging.

BUYERS PREMIUM: A 10% buyer's premium will be added to each purchase. If you bid $100.00 at checkout you will be charged $110.00.

PAYMENT: Accepted forms of payment include Visa, MasterCard, Discover, American Express, local check (under $500) & cash. Vehicle assets must be paid using cash, certified check or wire transfer (Credit Cards are not an acceptable payment method for vehicles). Payment must be made prior to picking any items up. Load out staff cannot accept any form of payment.

STAGGERED/DYNAMIC CLOSING: The auction will begin closing at 7:07pm CST Auction End Date. The closing time of each lot will be automatically extended an additional 5 minutes whenever a bid is placed within the last 5 minutes of the lot's closing time and will continue to do so until the timer runs out.

LOAD OUT: LOCAL PICKUP ONLY Winning Bidders may pick their items up at the designated Skyline Facilities during the specified load out times. Load Out will be held within three days of the Auction End Date. Any items left after the specified load out date will be considered forfeited, unless arrangements are made by the buyer. We will not be offering any additional load out dates or times. It will be the buyer's responsibility to dismantle & disconnect any and all equipment. Please bring your own packing materials, labor, tools & moving equipment.

CAUTION: For demonstration purposes various equipment may be joined. Do not assume a lot consists of more than one item simply because they are connected or pictured together. Please inspect the lot numbers and read the descriptions.

CATALOG DISCREPANCIES: You are bidding on the described item not the photograph, occasionally the wrong photo may be displayed, always read the item description.

CHOOSE WISELY: We want everyone to get a good deal and most will. However, when you bid on the wrong item or decide an item is not suited for your intended use, our clients are not willing to assume the cost of your mistakes. When in doubt about condition, completeness or suitability for intended use, please bid accordingly.

Server & Software Technical Issues: In the event there are technical difficulties related to the server, software or any other online auction-related technologies, Mayo Auction & Realty reserves the right to extend bidding, continue the bidding, or close the bidding.

NEITHER THE COMPANY PROVIDING THE SOFTWARE NOR MAYO AUCTION & REALTY SHALL BE HELD RESPONSIBLE FOR A MISSED BID OR THE FAILURE OF THE SOFTWARE TO FUNCTION PROPERLY FOR ANY REASON. Email notifications will be sent to registered bidders with updated information as deemed necessary by Mayo Auction & Realty.

Warranty and Condition of Items Sold: All items are sold 'AS IS, WHERE IS', with NO WARRANTY expressed or implied. It is the responsibility of the buyer to determine the condition of the items and bid accordingly. Descriptions are believed to be accurate but not guaranteed. When you are not certain of the condition or use of an item please bid accordingly.

The auctioneer reserves the right to add or remove items from the auction; split or combine lots; add minimum bids or reserve prices; cancel, suspend, extend or reschedule an individual item or auction event. The auctioneer reserves the right to make changes to the auction closing times or inspection or removal times.

15
WA 12264594.2
Case 4:18-cv-00128-DGK   Document 253   Filed 02/08/19   Page 15 of 15