## NEXT-GEN RECEIVER TRUST AGREEMENT

THIS TRUST AGREEMENT is established by an Order of the United States District Court for the Western District of Missouri (hereinafter, the "***Court***") in a proceeding captioned *Federal Trade Commission, et al. vs. Next-Gen Inc., et al.*, Case No. Case No. 4:18-CV-00128-DGK (hereinafter the "***Case***"). This Trust Agreement is specifically approved by the Court in said proceedings as approved by an Order dated March 21, 2019, and entered therein (hereinafter the "***Approval Order***," a copy of which is attached as **Exhibit A**).

### RECITALS

WHEREAS, on February 28, 2018, the United States Federal Trade Commission (the "***FTC***") and State of Missouri (the "***SOM***", together with the FTC, the "***Plaintiffs***") filed their Complaint for Permanent Injunction and Other Equitable Relief against Defendants Next-Gen, Inc., Westport Enterprises, Inc., Opportunities Unlimited Publications, Inc., Opportunities management Co., Summit Management Team, LLC, Contest America Publishers, Inc., Reveal Publications, LLC, AOSR Corporation, Lighthouse FLA Enterprises, LLC, and Gamer Designs LLC, (the "***Original Corporate Defendants***") and Kevin R. Brandes ("***Brandes***"), and William J. Graham (collectively, the "***Original Individual Defendants***"), pursuant to Section 13(b) of the Federal Trade Commission Act ("***FTC Act***"), 15 U.S.C. § 53(b), and Sections 407.020, et seq. of the Missouri Merchandising Practices Act.; and

WHEREAS, on July 17, 2018, the Court entered a Temporary Restraining Order ("***TRO***") appointing Eric L. Johnson, as the temporary receiver (the "***Receiver***") for certain of the Corporate Defendants. As part of the TRO, the Court froze the assets of the Corporate Defendants along with other related entities including Global Check Recovery, Inc. ("***GCR***"), Global Postal Services, Inc. ("***GPS***") and TB2 Partners, LLCS ("***TB2***").

WHEREAS, pursuant to the TRO, the Receiver was granted the authority to bring certain non-defendant entities under the control of the temporary receivership estate. On July 23, 2018 and September 6, 2018, the Temporary Receiver designated GCR, GPS, and TB2 as receivership entities. The Original Corporate Defendants, along with GCR, GPS, and TB2, are hereafter collectively referred to as the "***Receivership Entities***". All rights and duties, and all interests in property of every kind and nature acquired by or placed into the hands of the Receiver at any time

EXHIBIT A

WA 12649090.5

are collectively referred to herein as the "Receivership Estate."

WHEREAS, on September 24, 2018, Plaintiffs filed an Amended Complaint for Permanent Injunction and Other Equitable Relief adding Charles Floyd Anderson ("***Anderson***") and Montelago Marketing, Inc. as defendants. Anderson, Montelago Marketing, Inc., the Original Individual Defendants, and the Original Corporate Defendants are hereinafter referred to as the "***Defendants***"; and

WHEREAS, on March 2, 2019, the Parties filed with the Court their Stipulated Order for Permanent Injunction and Monetary Judgment (the "***Stipulated Order***"); and

WHEREAS, on March 13, 2019, the Court entered the Stipulated Order, which is attached hereto as **Exhibit B**; and

WHEREAS, pursuant to the Stipulated Order, a trust was to be established and certain of the Defendants were contribute assets to such trust (the "***Trust***"); and

WHEREAS, within sixty (60) days after entry of the Stipulated Order, Anderson shall transfer or cause to be transferred to the Trust the fideicomiso interest in certain ocean-front real property located in Cabo San Lucas, Mexico together with any structures, fixtures, and appurtenances thereto ("***CSL Property***"); and

WHEREAS, within fourteen (14) after entry of the Order, Anderson shall transfer or cause to be transferred to the Trust possession and legal and equitable title to a 2015 Bentley Continental Flying Spur, VIN SCBET9ZA9F042030, free of any liens, claims and encumbrances ("***Bentley***"); and

WHEREAS, within fourteen (14) days after entry of the Order, Brandes shall transfer or cause to be transferred to the Trust from BAM Marketing Group, LLC possession and legal and equitable title to a 2008 Sea Ray Yacht, HIN SERY1498D708 ("***Sea Ray***" together with the CSL Property, and Bentley, the "***Trust Assets***"); and

WHEREAS, the Trust is established for the sole purpose of administering the Trust Assets and making all distributions as provided for pursuant to this Agreement, the Stipulated Order, the TRO, or such other or additional orders that the Court has or may enter from time to time; and

WHEREAS, the Trust has no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, its liquidating purpose described in this Trust Agreement; and

WHEREAS, this Trust Agreement is the trust contemplated under the Stipulated Order, executed in order to facilitate the implementation of the Settlement.

NOW, THEREFORE, pursuant to the Approval Order, in consideration of the premises and the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged and affirmed, it is hereby agreed as follows by the Trustee and the Transferors (as defined below):

## SECTION 1
## THE TRUST

1.1    Creation and Name. This Trust Agreement is established by Order of the Court as a qualified settlement fund pursuant to 26 U.S.C. § 468B and 26 C.F.R. § 1.468B-1, and the Trust shall be known as the "***Next-Gen Receiver Trust***".

1.2    Purpose. The purpose of this Trust is to receive, liquidate, hold, invest, and disburse the Trust Assets, as well as the earnings or sale proceeds on such assets. This Trust is established for the ultimate benefit of the Plaintiffs and the Receivership Estate.

1.3    Initial Trustee. The initial trustee of the Trust shall be Eric L. Johnson (hereinafter referred to as the "***Trustee***") whose duties, obligations and authorities shall be (in addition to and to the extent not in conflict with any others provided by the Stipulated Order, Approval Order, common law, statute or court rule), as set forth below. The Trustee shall also act as Administrator of the Trust.

1.4    Transferors. For purposes of 26 U.S.C. § 468B, and the regulations issued thereunder, the "***Transferors***" and "***Related Persons***" shall include BAM Marketing Group, LLC, Floyd Anderson, and Sharon Anderson (but only as it relates to the CSL Property).

## SECTION 2
## CONTRIBUTIONS TO THE TRUST

2.1    Trust Assets. The Transferors will contribute to the Trust the Trust Assets as set

forth in the Stipulated Order and Approval Order.

2.2    No Further Obligation or Reversion. Following the transfer of assets as set forth in the Stipulated Order, the Transferors shall have no further obligation to contribute to the Trust, nor shall they have any right to a refund or reversion of any of those contributions or any earnings thereon.  Notwithstanding the foregoing, nothing in this Trust Agreement shall alter, amend, or modify any duty of cooperation imposed upon any Defendant pursuant to the Stipulated Order, or as otherwise ordered by the Court from time to time.

2.3    Nature of Contributions. Contributions made to the Trust shall not be construed as fines, penalties, monetary sanctions, or punitive damages.

## SECTION 3
## DISPOSITIVE PROVISIONS

3.1    Payment of Income and Principal. After the full and final satisfaction of all Administrative Expenses (defined below), during the term of the Trust, the Trustee shall pay the income and principal of the Trust, as approved by the Court, in settlement of the claims of the Plaintiffs in the Case. No distribution to Plaintiffs shall occur until all approved costs and expenses incurred by the Receiver and the Receivership Estate in the Case (whether incurred before or after the entry of the Stipulated Order and creation of this Trust) including all Administrative Expenses and any other costs and expenses incurred in winding up and dissolving the Receivership Entities as contemplated by the Stipulated Order, and the costs and expenses incurred to operate the Trust have been fully paid and satisfied.

3.2    No Authority to Conduct Business. The purpose of the Trust is limited to the matters set forth in Section 1.2 hereof, and this Trust Agreement shall not be construed to confer upon the Trustee any authority to carry on any business or activity for profit except to the extent reasonably necessary to, and consistent with, its liquidating purpose.

3.3    Termination of the Trust. The Trust shall terminate upon the earlier of an order of the Court, or at such time as all contributions shall have been made to the Trust by the Transferors, and no Trust Assets remain in the Trust.

3.4    Alterations, Amendments and Revocation. The Trust may be altered, amended, or

WA 12649090.5

revoked from time to time only upon an order of the Court, and with the written consent of the Trustee.

## SECTION 4
## POWERS AND DUTIES OF THE TRUST

4.1    Trustee. The Trustee, and any successor trustee, shall have the powers and duties as set forth in this Section 4 (in addition to, and to the extent not in conflict with, any others provided by statute or court rule).

4.2    Investment and Reinvestment. The Trust Assets, to the extent reduced to cash, shall be maintained in a chartered financial institution. The Trustee shall invest and reinvest the principal and income of the Trust in one or more segregated "interest-bearing accounts" selected by the Trustee, which shall be treated as a single fund without distinction between principal and income. For purposes of this paragraph, "interest-bearing account" includes a money fund whose objectives are current income consistent with liquidity and low risk, the maintenance of a portfolio of high quality, short-term money market instruments, and maintenance of a constant $1.00 net asset value per share. All investments shall be made so as to at all times provide sufficient liquidity to meet the anticipated cash needs of the Trust.

4.3    Payment of Expenses of Administration and Receivership Expenses. To incur and pay any and all charges, taxes and expenses, including, without limitation, Trustee fees, professional fees, insurances, property maintenance costs, security, escrow fees, and other costs of preservation, administration or liquidation of Receivership Assets and Trust Assets, or otherwise arising in connection with the Trust in the discharge of fiduciary obligations under the Trust Agreement or incurred by the Receiver or the Receivership Estate (collectively, "Administrative Expenses"). All such payments shall be made pursuant to an order of the Court including the TRO, the Stipulated Order, and any orders of the Court now existing or entered in the future of the Case.

4.4    Preservation of Principal. To at all times hold, manage, invest, and reinvest the Trust Assets in a manner designed to preserve the accrued income and principal of the Trust for the purposes of the Trust.

4.5    Distribution of Income and Principal. After the full and final payment of all Administrative Expenses incurred in connection with the administration of the Trust and

Case 4:18-cv-00128-DGK   Document 272-1   Filed 03/27/19   Page 5 of 51

Receivership Estate, the Trustee shall seek Court authorization to distribute the remaining income and principal of the Trust in such amounts to such parties at such times and in such manner as set forth in the Stipulated Order or as is otherwise approved by the Court.

4.6     Retention of Professionals and Consultants. With the prior approval of the Court, the Trustee may, in its discretion, engage the services of (and pay compensation to) an investment advisor, brokers, accountants, agents, managers, common counsel, or other professionals with respect to the management of investments of the Trust, the management of the Trust, the management or sale of Trust Assets, or any other matters. The Trustee may retain the same professionals as retained by the Receiver in the Case and a person is not disqualified from such retention solely because of such person's employment by or the representation of the Receiver or the Receivership Estate.

4.7     Execution of Documents of Transfer. To execute, acknowledge and deliver any and all documents of transfer and conveyance and any and all other instruments that may be necessary or appropriate to carry out the powers herein granted.

4.8     Tax Status of Trust. The Trustee shall not take any action which may impair or jeopardize the status of the Trust as a "qualified settlement fund" under 26 U.S.C. § 468B, and the regulations issued thereunder.

4.9     Litigation. Upon obtaining approval of the Court, to institute and defend litigation in the name of the Trust.

4.10    Tax Returns. To prepare or have prepared Federal and State income tax returns and other tax filings or forms as may be required from time to time by any jurisdiction for the Trust and for the Receiver, and to pay any tax from the Trust Assets that may be properly due and owing in connection with the liquidation of Trust Assets.

4.11    Accountings by Trustee. The Trustee shall at all times keep accurate books of account showing all transactions pertaining to the Trust, including all distributions, all charges for the Trustee's compensation and expenses, all charges for other expenses of the Trust as allowed hereunder, all receipts for all principal and income, and all investments and changes in investments.

WA 12649090.5

4.12    General Powers. Unless otherwise prohibited herein, in addition to the powers otherwise vested by law, including the statutory powers provided by the laws of the State of Missouri, which are incorporated herein by this reference, the Trustee shall be authorized to take with regard to the administration, investment and management of the Trust Assets any action deemed by the Trustee to be in the best interests of the Trust; provided, however, that the Trustee shall discharge his powers and duties with respect to the Trust solely in the interest of the accomplishment of the purposes and objectives of the Trust. To the extent not inconsistent with the status of the Trust as a "qualified settlement fund" under 26 U.S.C. § 468B, and the regulations issued thereunder, the Trustee's general powers shall be commensurate with the Receiver's powers as set forth in the TRO, the Stipulated Order, or such other powers granted pursuant to further Order of the Court.

4.13    Reliance by the Trustee. Except as otherwise provided herein:

4.13.1  The Trustee may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by the Trustee to be genuine and to have been signed or presented by the proper party or parties.

4.13.2  Persons dealing with the Trustee shall look only to the Trust Assets to satisfy any liability incurred by the Trustee to such Person in carrying out the terms of this Trust Agreement, and the Trustee shall not have any personal obligation to satisfy any such liability.

4.13.3  The Trustee may from time to time consult with counsel with respect to any question arising as to compliance with this Trust Agreement. The Trustee shall be fully protected, to the extent permitted by law, in acting in reliance upon the advice of counsel.

4.14    Trustee Compensation. The Trustee may receive reasonable compensation for the performance of duties undertaken pursuant to this Trust Agreement, the TRO, and the Stipulated Order, and for the cost of actual out-of-pocket expenses incurred by him or any professionals and other persons employed by him.

## SECTION 5
## SUCCESSOR TRUSTEES

5.1    Tenure. The Trustee will serve until resignation and the appointment of a successor pursuant to 5.2 below, removal pursuant to 5.3 below, Disability (as defined herein), or death (if applicable). "*Disability*" of the Trustee shall have occurred if, as a result of such Person's incapacity due to physical or mental illness as determined by a physician selected by the Trustee, the shall have been substantially unable to perform his or her duties hereunder for three (3) consecutive months or for an aggregate of 180 days during any period of twelve (12) consecutive months.

5.2    Resignation. The Trustee may resign at any time by written notice delivered to the Court. The resigning Trustee shall continue to serve until: (a) it prepares and presents a final accounting to the Court and Plaintiffs; (b) the resigning Trustee transfers all Trust Assets to the successor trustee; and (c) the resigning Trustee is released and discharged from his/her/its duties as Trustee in writing by the Court.

5.3    Removal. The Trustee or any successor trustee appointed pursuant to the Stipulated Order and this Trust Agreement may be removed as trustee with Cause by order of the Court. "Cause" means fraud, self-dealing, intentional misrepresentation, gross negligence, or willful misconduct.

5.4    Successor Trustee.

5.4.1    In the event that the Trustee is removed, resigns, or otherwise ceases to serve as Trustee, the Plaintiffs shall designate, subject to Court approval, a successor Trustee, provided that in all cases the Trustee shall be independent. The Trustee may also petition the Court to appoint its successor.

5.4.2    Immediately upon the appointment of and acceptance by any successor trustee, all rights, powers, duties, authority, and privileges of the predecessor trustee hereunder will be vested in and undertaken by the successor trustee without any further act or the necessity of any conveyance or instrument; and the successor trustee will not be liable personally for any act or omission of the predecessor trustee.

5.4.3    Any successor trustee appointed hereunder shall execute an instrument

accepting such appointment and assuming all of the obligations of the predecessor Trustee hereunder, and such successor shall be subject to the same qualifications and shall have the same rights, powers, duties, and discretion, and otherwise be in the same position, as the originally named Trustee.

5.4.4    References herein to the "Trustee" shall be deemed to refer to any successor trustee acting hereunder.

5.4.5    Upon the appointment of a successor trustee, the predecessor trustee (or the duly appointed legal representative of a deceased trustee or a trustee suffering a Disability) shall, if applicable, when requested in writing by the successor trustee, execute and deliver an instrument or instruments conveying and transferring to such successor trustee, without recourse to the predecessor trustee, all the estates, properties, rights, powers and trusts of such predecessor trustee, and shall duly assign, transfer, and deliver to such successor trustee all property and money held hereunder, and all other assets and documents relating to the Trust, and the Trust Assets then in such predecessor trustee's possession and held hereunder.

5.5    Preservation of Record of Changes to Trustees. A copy of each instrument of resignation, removal, appointment and acceptance of appointment shall be attached to an executed counterpart of this Trust Agreement in the custody of the Court.

**SECTION 6**
**STANDARD OF CARE,  EXCULPATION, INDEMNITY**

6.1    Bond. No bond or other security shall be required of the Trustee.

6.2    Standard of Care.  Each Trustee, whether initially named or appointed as a successor trustee, acts as a trustee only and not personally. In respect of any contract, obligation or liability made or incurred by the Trustee, in good faith, all persons shall look solely to the Trust and not to the Trustee personally. Neither the Trustee, nor  his  employees,  advisors  or professionals,  shall  be  liable  for any damages arising out of the creation, operation or termination of the Trust, including actions taken or omitted in fulfillment of his or her duties with respect to the Trust, except in the case of such party's gross negligence, bad faith or willful misconduct.   In performing its duties under this Trust Agreement, the Trustee shall have no liability for any action

taken in accordance with the advice of counsel, accountants, appraisers and other professionals. Without limiting the generality of the foregoing, the Trustee may rely without independent investigation on copies of orders of the Court reasonably believed by the Trustee to be genuine, and shall have no liability for actions taken in reliance thereon. None of the provisions of this Trust Agreement shall require the Trustee to expend or risk his own funds or otherwise incur personal financial liability in the performance of any duties hereunder or in the exercise of any of rights and powers. The Trustee and the may rely without inquiry upon writings delivered to him that he reasonably believes to be genuine and to have been given by a proper person. Notwithstanding the foregoing, nothing in this Section 3.12 shall relieve the Trustee or his employees, advisors or professionals, from any liability for any actions or omissions arising out of their gross negligence or willful misconduct. Any action taken or omitted to be taken in the case of the Trustee with the express approval of the Court and will conclusively be deemed not to constitute gross negligence, bad faith or willful misconduct.

6.3     Exculpation. The Trustee shall not be subject to any personal liability whatsoever, whether in tort, contract or otherwise, to any Person in connection with the affairs of the Trust and all Persons claiming against the Trustee or otherwise asserting claims of any nature in connection with affairs of the Trust, shall look solely to the Trust Assets for satisfaction of any such claims. To the extent that, at law or in equity, the Trustee has duties (including fiduciary duties) and liabilities relating hereto, to the Trust or to the beneficiaries thereof, it is hereby understood that such duties and liabilities are eliminated to the fullest extent permitted by applicable law and replaced by the duties and liabilities expressly set forth in this Trust Agreement with respect to the Trustee.

6.4     Indemnity. The Trustee and his respective employees and professionals shall be indemnified to the fullest extent permitted by law by the Trust against all liabilities arising out of the creation, operation or termination of the Trust, including actions taken or omitted in fulfillment of their duties with respect to the Trust, except for those acts that are determined by Court order to have arisen out of their own willful misconduct, gross negligence, or bad faith.

6.5     Insurance. The Trust will obtain as soon as is reasonably practicable after the Acceptance Date (as defined herein) customary insurance coverage for the protection of the

Case 4:18-cv-00128-DGK   Document 272-1   Filed 03/27/19   Page 10 of 51

Trustee and the Trust Assets.

## SECTION 7
## MISCELLANEOUS

7.1     Relationship to, and Incorporation of, the Stipulated Order. This Trust Agreement is to aid in the implementation of the Stipulated Order, and therefore this Trust Agreement incorporates the provisions of the Stipulated Order by this reference. To that end, the Trustee shall have full power and authority to take any action consistent with the purpose and provisions of the Stipulated Order and to seek any orders from the Court in furtherance of implementation of the Stipulated Order, in each case solely to the extent such actions or orders are in furtherance of this Trust Agreement, but in each case subject in all respects to and solely to the extent not inconsistent with the terms of the Stipulated Order. To the extent that there is a conflict between the provisions of this Trust Agreement, and the provisions of the Stipulated Order, the terms of the Stipulated Order shall govern. The Trustee may, from time to time, seek from the Court clarifications, modifications, supplements or changes to this Trust Agreement as needed to carry out the terms of the purposes of the Stipulated Order.

7.2     Retention of Jurisdiction. The Trust and Trust Agreement shall be subject at all times to the continuing jurisdiction of the Court.

7.3     Choice of Law. This Trust shall be administered, construed, and enforced according to the laws of the State of Missouri without regard to its choice-of-law principles.

7.4     Rules of Construction. As used in this Trust Agreement, words in the singular include the plural and words in the plural include the singular, and the masculine and neuter genders shall be deemed to include the masculine, feminine and neuter. The description heading for each Section and Subsection of this Agreement shall not affect the interpretation or the legal efficacy of this Trust Agreement. Unless otherwise provided herein: (a) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Trust Agreement as a whole and not to any particular section, subsection or clause contained in this Trust Agreement;  and (b) the term "including" shall be construed to mean "including, but not limited to," "including, without limitation," or words of similar import.

7.5     No Admission. It is agreed that neither the act of entering into this Trust Agreement

nor any contribution to the Trust nor any action taken under this Trust Agreement shall be deemed to constitute an admission of any liability or fault on the part of any person.

7.6     <u>Severability</u>. If any provision of this Trust Agreement is held to be invalid or unenforceable, the validity and enforceability of the remaining provisions of this Trust Agreement shall not be affected thereby.

7.7     <u>Counterparts</u>. This Trust Agreement may be executed in multiple counterparts, each of which shall be deemed an original, and all of which taken together shall be deemed but one instrument

7.8     <u>Acceptance by the Trustee</u>. The Trustee, by executing this Trust Agreement on the date set forth below (the "*Acceptance Date*"), accepts the Trust herein created and provides for and accepts all rights, powers, privileges, duties and responsibilities of the Trustee hereunder and agrees to exercise and perform the same in accordance with the terms of this Trust Agreement, the Approval Order, and the Stipulated Order.

[EXECUTION PAGES TO FOLLOW]

Case 4:18-cv-00128-DGK   Document 272-1   Filed 03/27/19   Page 12 of 51

IN WITNESS WHEREOF, the Trustee and Transferors have executed this Agreement as of the date indicated below.

**TRUSTEE**

_(signature)_

Eric L. Johnson

Date: 3-22-19

STATE OF Missouri )
) ss.
COUNTY OF Jackson )

On this 22 day of March , 2019, before me personally appeared the Trustee, known to me to be the person described in and who executed the Trust Agreement on behalf of the trust, as Trustee, and acknowledged to me that the Trust Agreement was executed by such person for the purposes therein stated.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

_(signature)_

Notary Public

DAPHNE RAMBO
Notary Public - Notary Seal
STATE OF MISSOURI
Jackson County
My Commission Expires: 10/19/2021
Commission # 13804636

My Commission Expires: 10/19/2021

*Next-Gen QSF Trust Agreement*
COUNTERPART EXECUTION PAGE

WA 12649090.5

IN WITNESS WHEREOF, the Trustee and Transferors have executed this Agreement as of the date indicated below.

**TRANSFEROR**

_(signature)_ _____     Date: _3/22/19_

BAM MARKETNG GROUP LLC
By: Kevin Brandes
Its: Sole Member


STATE OF _Missouri_ )
                                    ) ss.
COUNTY OF _Jackson_ )


On this _22nd_ day of _March_____, 2019, before me personally appeared the Transferor, known to me to be the person described in and who executed the Trust Agreement on behalf of the trust, as Transferor, and acknowledged to me that the Trust Agreement was executed by such person for the purposes therein stated.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

_(signature)_ _____
Notary Public


My Commission Expires: _3|8|21_

NOTARY PUBLIC
NOTARY
SEAL
STATE OF MISSOURI

NICHOLE KRUGER
My Commission Expires
March 8, 2021
Jackson County
Commission #13759308

*Next-Gen QSF Trust Agreement*
COUNTERPART EXECUTION PAGE

WA 12649090.5

**TRANSFEROR**

_Sharon Ann Anderson_      Date: 3/23/19

SHARON ANN ANDERSON,
INDIVIDUALLY, AND ONLY AS THE
AGREEMENT RELATES TO THE CSL
PROPERTY

STATE OF _Arizona_

               ) ss.

COUNTY OF _Maricopa_

    On this _____ day of _____, 2019, before me personally appeared the Transferor, known to me to be the person described in and who executed the Trust Agreement on behalf of the trust, as Transferor, and acknowledged to me that the Trust Agreement was executed by such person for the purposes therein stated.

    IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

Notary Public _____

My Commission Expires: 9/20/22

CINDY FERNANDEZ
Notary Public - State of Arizona
MARICOPA COUNTY
Commission # 553530
Expires September 20, 2022

_Next-Gen QSF Trust Agreement_
COUNTERPART EXECUTION PAGE

WA 12649090.5

**TRANSFEROR**

_(signature)_ _____     Date: 3/23/19

FLOYD ANDERSON

STATE OF _Arizona_ )
                            ) ss.
COUNTY OF _Maricopa_ )

     On this _____ day of _____, 2019, before me personally appeared the Transferor, known to me to be the person described in and who executed the Trust Agreement on behalf of the trust, as Transferor, and acknowledged to me that the Trust Agreement was executed by such person for the purposes therein stated.

     IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

Notary Public _(signature)_ _____

My Commission Expires: 9/20/22

**CINDY FERNANDEZ**
Notary Public - State of Arizona
MARICOPA COUNTY
Commission # 553530
Expires September 20, 2022

_Next-Gen QSF Trust Agreement_
COUNTERPART EXECUTION PAGE

WA 12649090.5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-CV-00128-DGK |
| | ) | |
| NEXT-GEN, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING RECEIVER'S EXPEDITED MOTION FOR ESTABLISHMENT**
**AND APPROVAL OF NEXT-GEN RECEIVER TRUST AND RELATED RELIEF**

Now before the Court is the Receiver's Expedited Motion for Establishment and Approval of Next-Gen Receiver Trust and Related Relief (the "Motion") (Doc. 266). After reviewing the Motion, supporting exhibits, noting there is no opposition from the Parties, and for good cause shown, the Court GRANTS the motion.

The Court further FINDS that:

1. The Next-Gen Receiver Trust (the "Trust") is being established to resolve or satisfy one or more contested or uncontested claims that have resulted or may result from an event or related series of events that has occurred and that has given rise to at least one claim asserting liability arising out of a statutory tort or violation of law;

2. The Trust is a trust under state law and that its assets are otherwise segregated from other assets of the transferors and related persons within the meaning of 26 U.S.C. §§ 267(b) or 707(b)(1); and

3. The Trust is established and approved pursuant to an order of this Court, according to the terms, conditions, authorities and duties set forth in the Next-Gen Receiver Trust Agreement, attached as Exhibit A to the Motion; and

EXHIBIT A

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Qualified Settlement Fund and the Trust are established and/or approved and that Eric L. Johnson ("Receiver") is hereby appointed as the initial administrator and trustee of the Trust;

IT FURTHER ORDERED that the Trust Agreement and the terms thereof, which are incorporated herein by reference, are approved;

IT IS FURTHER ORDERED that no transferor shall have a right to a refund, reversion or any other beneficial interest in the income or corpus of the Trust, nor shall any transferor place any restrictions on the Trust's ability to use or dispose of the Trust Assets;

IT IS FURTHER ORDERED that the Trust is authorized and approved to establish accounts at UMB Bank, N.A. ("UMB") or such other financial institutions (together with UMB, the "Financial Institutions") as the trustee of the Trust deems appropriate;

IT IS FURTHER ORDERED that the Financial Institutions, at the direction of the trustee of the Trust, are authorized and approved to receive, process, honor, and pay any and all checks, ACH and wire transfers, and other instructions and drafts payable through, drawn, or directed on the Financial Institution;

IT IS FURTHER ORDERED that the Financial Institutions are authorized and approved to accept and honor all representations from the trustee of the Trust as to which checks, drafts, wires or ACH transfers shall be honored or dishonored consistent with any order(s) of this Court and governing law;

IT IS FURTHER ORDERED that the Financial Institutions are authorized and approved, in the ordinary course, to charge, and the Trust to pay, honor, or allow as a deduction from the appropriate account, certain service and other fees, costs, charges and expenses;

IT IS FURTHER ORDERED that the Receiver is authorized to obtain for the Trust a tax payer identification number;

IT IS FURTHER ORDERED that the Trust is authorized and approved to retain a property manager for real property located in Cabo San Lucas, Mexico ("CSL"), which may include the current property manager;

IT IS FURTHER ORDERED that the Trust is authorized, but not directed, to pay expenses related to insurance, utilities, taxes, dues, assessments, management fees, and other maintenance costs of the CSL property up to an amount of $50,000 without getting further Court authority (the "CSL Preservation Cap");

IT IS FURTHER ORDERED that the Trust is authorized to employ and compensate Jonathan A. Pikoff and Pikoff & Asociados, S.C. ("Pikoff") pursuant to the terms of the Pikoff Engagement Letter

IT IS FURTHER ORDERED that the payment of the Retainer (not to exceed $5,800) and the CSL Legal Expenses (not to exceed $20,000) without getting further Court authority ("CSL Legal Cap") is hereby authorized; and

IT IS FURTHER ORDERED that the Receiver is authorized to advance monies from the Receivership Estate to the Trust and/or to cover the Trust's expenses (including the CLS Preservation Cap, the CSL Legal Cap, and Retainer) until such time as the Trust has sufficient funds to cover its own expenses and authorizing the Trust to reimburse the Receivership Estate for such advances.

**IT IS SO ORDERED.**

Date: __March 21, 2019__                       __/s/ Greg Kays_____
                                                GREG KAYS, JUDGE
                                                UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| FEDERAL TRADE COMMISSION, et ano., | No. 4:18-CV-0128-DGK |
| Plaintiffs, | **STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT** |
| v. | |
| NEXT-GEN, INC., et al., | |
| Defendants. | |

On February 20, 2018, Plaintiffs Federal Trade Commission ("**Commission**" or "**FTC**") and the State of Missouri filed their Complaint for Permanent Injunction and Other Equitable Relief against Defendants Next-Gen, Inc.; Westport Enterprises, Inc.; Opportunities Unlimited Publications, Inc.; Opportunities Management Co.; Summit Management Team, LLC; Contest America Publishers, Inc.; Reveal Publications, LLC; AOSR Corporation, formerly known as Subscription Reporter Corporation, formerly known as Sweepstakes Reporter Co., Inc.; Lighthouse FLA Enterprises, LLC; Gamer Designs, LLC; Kevin R. Brandes; and William J. Graham, pursuant to Section 13(b) of the Federal Trade Commission Act ("**FTC Act**"), 15 U.S.C. § 53(b), and Sections 407.020, *et seq.*, of the Missouri Merchandising Practices Act.   Doc. 1.   On September 24, 2018, the Plaintiffs filed an Amended Complaint for Permanent Injunction and Other Equitable Relief ("**Amended Complaint**") that added Charles Floyd Anderson and Montelago Marketing, Inc. as Defendants.   Doc. 203.

EXHIBIT B

The Plaintiffs and all Defendants hereby agree to the entry of this Stipulated Order for Permanent Injunction and Monetary Judgment ("**Order**") to resolve all matters in dispute in this action between them.

THEREFORE, IT IS ORDERED as follows:

## FINDINGS

1.      This Court has jurisdiction over this matter.

2.      The Amended Complaint alleges that the Defendants engaged in deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, and in violation of § 407.020 of the Missouri Merchandising Practices Act, in connection with the distribution of deceptive sweepstakes, games of skill, sweepstakes newsletters, and other prize mailers to consumers.

3.      The Defendants neither admit nor deny any of the allegations in the Amended Complaint, except as specifically stated in this Order.   Only for purposes of this action, the Defendants admit the facts necessary to establish jurisdiction.

4.      The Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and all parties agree to bear their own costs and attorneys' fees.   The Defendants also waive and release any claims that they may have against the Plaintiffs, the Receiver, or their agents, relating to this action.

5.      The Defendants and Plaintiffs agree that this Order resolves all claims arising from the allegations in the Complaint, and they waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For purposes of this Order, the following definitions apply:

A.     "**Clearly and Conspicuously**" means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

1. In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.   In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2. A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3. An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

4. In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

6. The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

7. The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

8. The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

9. When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

B. "**Defendants**" means all of the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination.

C. "**Corporate Defendant(s)**" means Next-Gen, Inc.; Westport Enterprises, Inc.; Opportunities Unlimited Publications, Inc.; Opportunities Management Co.; Summit Management Team, LLC; Contest America Publishers, Inc.; Reveal Publications, LLC; AOSR Corporation; Lighthouse FLA Enterprises, LLC; Gamer Designs, LLC; Montelago Marketing, Inc.; and their subsidiaries, affiliates, successors, and assigns.

D. "**Individual Defendant(s)**" means Kevin R. Brandes, William J. Graham, and Charles Floyd Anderson, individually, collectively, or in any combination.

E. "**Original Defendant(s)**" means Defendants Next-Gen, Inc.; Westport Enterprises, Inc.; Opportunities Unlimited Publications, Inc.; Opportunities Management Co.; Summit Management Team, LLC; Contest America Publishers, Inc.; Reveal Publications, LLC; AOSR Corporation, formerly known as Subscription Reporter Corporation, formerly known as Sweepstakes Reporter Co., Inc.; Lighthouse FLA Enterprises, LLC; Gamer Designs, LLC; Kevin R. Brandes; and William J. Graham.

F. "**Prize Promotion**" means (1) a sweepstakes or other game of chance; or (2) an oral or written express or implied representation that a person has won, has been selected to

receive, or may be eligible to receive, or enter a game of skill or other contest to receive, a prize or purported prize, whether in the form of money, merchandise, or anything of value.

G. "**Receiver**" means Eric L. Johnson of Kansas City, Missouri, and any deputy receiver named by him.

H. "**Receivership Entities**" means Next-Gen, Inc.; Westport Enterprises, Inc.; Opportunities Unlimited Publications, Inc.; Opportunities Management Co.; Summit Management Team, LLC; Contest America Publishers, Inc.; Reveal Publications, LLC; AOSR Corporation; Lighthouse FLA Enterprises, LLC; Gamer Designs, LLC; Global Postal Solutions, Inc.; Global Check Recovery, Inc.; TB2 Partners, LLC; and any trust created by the Receiver and designated as a Receivership trust (the "**Receiver Trust**").

I. "**Receivership Estate**" means the estate created by the TRO and this Order including all the property and assets of the Receivership Entities.

## ORDER

## I. BAN ON PRIZE PROMOTIONS

IT IS ORDERED that the Defendants, whether acting directly or indirectly, are permanently restrained and enjoined from advertising, marketing, promoting, offering for sale, or selling, or assisting in the advertising, marketing, promoting, offering for sale, or selling of any Prize Promotion, provided, however, that the Defendants may conduct a free raffle, drawing, or similar prize giveaway for which an individual enters or signs up in person.

## II. PROHIBITION AGAINST MISREPRESENTATIONS

IT IS FURTHER ORDERED that the Defendants, their officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, promoting,

offering for sale, or sale of any good or service, are permanently restrained and enjoined from (a) misrepresenting, expressly or by implication, any fact material to consumers, concerning any good or service, and (b) failing to Clearly and Conspicuously disclose any term material to consumers.

## III.   PROHIBITION AGAINST MISREPRESENTATIONS UNDER STATE LAW

IT IS FURTHER ORDERED that the Defendants, their officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, promoting, offering for sale, or sale of any good or service, are permanently restrained and enjoined from any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact.  Mo. Rev. Stat. § 407.020.  This Order shall also be considered a Consent Judgment without admissions of violations as defined in Mo. Rev. Stat. § 407.100.8. With respect to Plaintiff State of Missouri only, during the time in which the judgment granted herein is suspended, it shall not constitute a lien under Mo. Rev. Stat. § 511.350.

## IV.   MONETARY JUDGMENT AND PARTIAL SUSPENSION

IT IS FURTHER ORDERED that:

A.      Judgment in the amount of One Hundred Fourteen Million, Seven Hundred Seventy-Six Thousand, Seven Hundred Thirty-Two Dollars ($114,776,732) is entered in favor of the Plaintiffs against the Individual Defendants and Corporate Defendants, jointly and severally, as equitable monetary relief, including but not limited to rescission or reformation of contracts, restitution, disgorgement, or refund of monies.

B.      In partial satisfaction of the monetary judgment imposed by Section IV.A, the Defendants shall, within 21 days after entry of this Order, pay to Plaintiffs Twenty-one Million,

Five Hundred Ninety-Five Thousand dollars ($21,595,000) by electronic funds transfer in accordance with instructions previously provided to the Defendants by the Plaintiffs.

C.   In partial satisfaction of the monetary judgment imposed by Section IV.A, Defendant Anderson shall, within 60 days after entry of this Order, unless otherwise agreed to in writing by the Plaintiffs and the Receiver, transfer to the Receiver, or the Receiver Trust, Anderson's fideicomiso interest in that certain ocean-front real property located in Cabo San Lucas, Mexico, having the following description:

> The condominium unit within Las Residencias Residential Subdivision within Punta Ballena located in Cabo San Lucas, Baja California Sur, said unit designated and described as Lot 102, Block "A" as defined by the Incorporation of the Sub Condominium Regime of Property "Las Residencias" upon Fraction V adopted by Immobilaria Cabo Ballena, S.A. de C.V. under Public Instrument Number 48,549 within Volume 939 issued December 28, 2001, before Notary Public Number 1 of Cabo San Lucas, Baja California Sur, namely, Lic. Armando Antoni Aguilar Ruibal within Volume CXXXI-EP of the First Section of the Public Registry of Property and Commerce of San José del Cabo, Baja California Sur, together with an undivided 2.397930% interest in "Las Residencias" Common Areas (as defined by the Condominium Regime) and an undivided 0.623431772% interest in "Punta Ballena" Common Areas (as defined by the Condominium Regime).  Clave Cadastral Number: 402-090-005-001-001-102.

together with any structures, fixtures, and appurtenances thereto ("**CSL Property**").  Defendant Anderson shall:

1.   Cooperate fully with the Receiver and take such other steps as the Receiver may require to transfer to the Receiver, or to the Receiver Trust, possession and legal and equitable title to the CSL Property, including executing any documents, procuring the signatures of any other person with an interest in the property, providing access to the property, providing any necessary information, and surrendering possession of the property.

2. Pay any necessary costs and expenses related to the transfer of the CSL Property to the Receiver or the Receiver Trust, including but not limited to, transfer, excise, or similar taxes, translation services, notario fees, recording fees, title searches, and title insurance.

3. At or before the time of transfer, pay any outstanding liens, mortgages, or other encumbrances or any other amounts due or owing on the CSL Property, including but not limited to taxes, insurance premiums, homeowner's assessments, reasonable and necessary maintenance, and similar fees or expenses, so that at the time of transfer there are no outstanding liens, mortgages, or other encumbrances or any other amounts due or owing on the CSL Property.

4. Maintain in good working order, keep in the same condition, and take no action to diminish the value of the CSL Property, including any structures, fixtures, and appurtenances thereto, as of the date Defendant Anderson executed his sworn financial statement dated September 21, 2018.

5. Cause existing insurance coverage for the CSL Property to remain in force until the transfer of the property to the Receiver or the Receiver Trust.

Defendant Anderson's spouse, Sharon Ann Anderson, waives all claims to, unconditionally releases any interest in, and consents to the transfer to the Receiver or the Receiver Trust possession of and any interest she has or may have, directly or indirectly, or by operation of applicable law, in the CSL Property. Nothing in this Order requires Defendant Anderson or Sharon Ann Anderson to pay any amount relating to or concerning the CSL Property, including but not limited to any taxes, insurance, homeowner's assessments, maintenance, and similar fees, after Defendant Anderson and Sharon Ann Anderson have fully complied with the provisions of

this Section IV.C. and vacated and transferred possession and legal and equitable title of the CSL Property to the Receiver or the Receiver Trust.

D.     Within 14 days after entry of this Order, Defendant Anderson shall transfer or cause to be transferred to the Receiver, or the Receiver Trust, possession and legal and equitable title to a 2015 Bentley Continental Flying Spur, VIN SCBET9ZA9FC042030, free of any liens, claims, or encumbrances.   Defendant Anderson shall cooperate fully with the Receiver and take such other steps as the Receiver may require to transfer to the Receiver, or to the Receiver Trust, possession and legal and equitable title to the automobile.   Anderson shall cause existing insurance coverage for the automobile to remain in force until the transfer of the automobile to the Receiver or the Receiver Trust.   Defendant Anderson shall also maintain in good working order, keep in the same condition, and take no action to diminish the value of the automobile prior to its transfer.

E.     Within 14 days after entry of this Order, Defendant Brandes shall take all steps necessary to transfer, or cause to be transferred, from BAM Marketing Group, LLC, to the Receiver or the Receiver Trust, possession and legal and equitable title to a 2008 Sea Ray yacht, HIN SERY1498D708, free of any liens, claims, or other encumbrances.   Defendant Brandes shall cooperate fully with the Receiver and take such other steps as the Receiver may require to transfer to the Receiver, or to the Receiver Trust, possession and legal and equitable title to the yacht. Defendant Brandes shall cause existing insurance coverage for the yacht to remain in force until the transfer of the yacht to the Receiver or the Receiver Trust.   Defendant Brandes shall also maintain in good working order, keep in the same condition, and take no action to diminish the value of the yacht prior to its transfer.

F.     Upon the payment and transfers of assets required by Sections IV.B through IV.E, the remainder of the judgment imposed by Section IV.A is suspended, subject to Sections IV.G through IV.I, below.

G.     The Plaintiffs' agreement to the suspension of part of the judgment is expressly premised upon the truthfulness, accuracy, and completeness of the Defendants' sworn financial statements and related documents (collectively, "**financial representations**") submitted to the Plaintiffs, namely:

1. The Financial Statement of Individual Defendant Kevin R. Brandes, signed on July 27, 2018, including attachments and as supplemented on August 31, 2018;

2. The Financial Statement of Individual Defendant William J. Graham, signed on July 27, 2018, including attachments and as supplemented on August 8, 2018;

3. The Financial Statement of Individual Defendant Charles Floyd Anderson, signed on September 21, 2018, including attachments and as supplemented on October 16, 2018;

4. The Financial Statement of Corporate Defendant Next-Gen, Inc., signed on July 27, 2018, including attachments and as supplemented on August 3, 2018;

5. The Financial Statement of Corporate Defendant Westport Enterprises, Inc., signed on July 27, 2018, including attachments and as supplemented on August 3, 2018;

6. The Financial Statement of Corporate Defendant Opportunities Unlimited Publications, Inc., signed on July 27, 2018, including attachments;

7. The Financial Statement of Corporate Defendant Opportunities Management Co., signed on July 27, 2018, including attachments;

8. The Financial Statement of Corporate Defendant Summit Management Team, LLC, signed on July 27, 2018, including attachments;

9. The Financial Statement of Corporate Defendant Contest America Publishers, Inc., signed on July 27, 2018, including attachments;

10. The Financial Statement of Corporate Defendant Reveal Publications, LLC, signed on July 27, 2018, including attachments;

11. The Financial Statement of Corporate Defendant AOSR Corporation, signed on July 27, 2018, including attachments;

12. The Financial Statement of Corporate Defendant Lighthouse FLA Enterprises, LLC, signed on July 27, 2018, including attachments;

13. The Financial Statement of Corporate Defendant Gamer Designs, LLC, signed on July 27, 2018, including attachments;

14. The Financial Statement of Corporate Defendant Montelago Marketing, Inc., signed on October 16, 2018, including attachments;

15. The Financial Statement of BG3, signed by Individual Defendant William Graham on August 3, 2018, including attachments;

16. The Financial Statement of Empire Consulting, Inc., signed by Individual Defendant William Graham on August 3, 2018, including attachments;

17. The Financial Statement of Extreme Holdings, signed by Individual Defendant William Graham on August 3, 2018, including attachments;

18. The Financial Statement of G-T-R Ranch LLC, signed by Individual Defendant William Graham on August 3, 2018, including attachments;

19. The Financial Statement of H2O Investments, LLC, signed by Individual Defendant William Graham on August 3, 2018, including attachment;

20. The Financial Statement of Pryor Consulting, LLC, signed by Individual Defendant William Graham on August 3, 2018, including attachments;

21. The Financial Statement of 1151 Century, LLC, signed by Individual Defendant Kevin Brandes on August 3, 2018, including attachments;

22. The Financial Statement of A&B Partners, LLC, signed by Individual Defendant Kevin Brandes on August 3, 2018, including attachments;

23. The Financial Statement of B&G Auto Sales, Inc., signed by Individual Defendant Kevin Brandes on August 3, 2018, including attachments;

24. The Financial Statement of BAM Marketing Group LLC, signed by Individual Defendant Kevin Brandes on August 3, 2018, including attachments;

25. The Financial Statement of Global Check Recovery, Inc., signed by Individual Defendant William Graham on August 3, 2018, including attachments;

26. The Financial Statement of Global Postal Solutions, Inc., signed by Individual Defendant William Graham on November 27, 2018, including attachments;

27. The Financial Statement of International Direct Marketing Group, signed by Individual Defendant Kevin Brandes on August 3, 2018, including attachments;

28. The Financial Statement of LHP Marketing Concepts LLC, signed by Individual Defendant Kevin Brandes on August 3, 2018, including attachments;

29. The Financial Statement of TB2 Partners, Inc., signed by Individual Defendant Kevin Brandes, on August 3, 2018, including attachments;

30. The Financial Statement of TNT Investment Group, LLC, signed by Individual Defendant Kevin Brandes on August 3, 2018, including attachments;

31. The Financial Statement of TNT Marketing Group, LLC, signed by Individual Defendants Kevin Brandes on August 3, 2018, including attachments;

32. The Financial Statement of Aventura Properties, LLC, signed by Individual Defendant Charles Floyd Anderson on October 16, 2018, including attachments;

33. The Financial Statement of Flask, LLC, signed by Individual Defendant Charles Floyd Anderson on October 16, 2018, including attachments; and

34. The Financial Statement of Wingspan Way, LLC, signed by Individual Defendant Charles Floyd Anderson on October 16, 2018, including attachments.

H.    The suspension of the judgment will be lifted as to any Defendant if, upon motion by either Plaintiff, the Court finds that the specific Defendant: (i) failed to disclose any material asset; (ii) materially misstated the value of any asset; or (iii) made any other material misstatement or omission in the financial representations identified above.

I.    If the suspension of the judgment is lifted as to any Defendant, the judgment becomes immediately due as to that Defendant in the amount specified in Section IV.A above (which the parties stipulate only for purposes of this Section represents the consumer injury alleged in the Amended Complaint), less (1) any amount paid pursuant to Section IV.B, and (2) any amount transferred to the Commission pursuant to Section IX.G, plus interest computed from the date of entry of this Order.

## V.  MODIFICATION OF ASSET FREEZE

IT IS FURTHER ORDERED that the freeze imposed on the Original Defendants' assets pursuant to the Temporary Restraining Order ("**TRO**"), Doc. 98, entered on July 17, 2018, is modified to permit the payment of funds required by Section IV.B and the transfer of property required by Section IV.E of this Order. Upon completion of the payment required by Section IV.B and the transfer of property required by Section IV.E, the asset freeze imposed by the TRO shall be lifted as to Defendants Brandes and Graham, and as to any funds held in the trust accounts of Graves Garrett LLC and Kennyhertz Perry for the benefit of any of the Corporate Defendants. Unless otherwise ordered by the Court on motion of the Receiver or the Receiver Trust, the asset freeze shall remain in full force and effect with regard to all other assets of the Receivership Entities until the Receiver completes all his duties, the Court authorizes payment of the Receiver's fees and expenses, and the Court discharges the Receiver pursuant to Section IX.G. Upon entry of this Order, a financial institution may rely on a letter from the Commission stating that a transfer of assets has been authorized by Section IV.B through Section IV.E, or that the asset freeze has been lifted altogether as to a particular Defendant.

## VI. ADDITIONAL MONETARY PROVISIONS

IT IS FURTHER ORDERED that:

A.     The Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.     The facts alleged in the Amended Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission or the State of Missouri, including in a proceeding to enforce their rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

Page 13 of 32

C. The facts alleged in the Amended Complaint establish all elements necessary to sustain an action by the Commission or the State of Missouri pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D. The Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which the Defendants previously submitted to the Plaintiffs, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

E. All money paid or transferred to Plaintiffs pursuant to this Order may be deposited into a fund administered jointly by the Plaintiffs or their designees to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund. In the event that direct redress to consumers is wholly or partially impracticable or funds remain after the redress is completed, the remaining funds shall be divided equally among Plaintiffs. Each Plaintiff may distribute any of the remaining funds as follows:

1. The Commission may apply any remaining funds for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint. Any funds not used for such equitable relief shall be deposited to the United States Treasury as disgorgement.

2. The State of Missouri may apply any remaining funds to the credit of the Merchandising Practices Revolving Fund as set forth in § 407.140, RSMo.; or may

apply such funds at the discretion of the Missouri Attorney General for uses permissible under and consistent with Missouri law.

Defendants have no right to challenge any actions the Plaintiffs or their representatives may take pursuant to this Section VI.E.

## VII. DISPOSITION OF CUSTOMER INFORMATION

IT IS FURTHER ORDERED that the Defendants and their officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, are permanently restrained and enjoined from directly or indirectly:

A.     Failing to provide any customer information within the Defendants' possession, custody, or control, sufficient to enable the Plaintiffs to efficiently administer consumer redress. If a representative of the Plaintiffs requests in writing any information within the Defendants' possession, custody, or control related to redress, the Defendants must provide it, in the form prescribed by the Plaintiffs, within 14 days.

B.     Disclosing, using, or receiving any benefit from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Defendant obtained prior to entry of this Order; and

C.     Failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after receipt of written direction to do so from a representative of the Plaintiffs.

Provided, however, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

Case 4:18-cv-00128-DGK   Document 27-1   Filed 03/27/19   Page 34 of 51

## VIII. CONTINUING APPOINTMENT OF RECEIVER

IT IS FURTHER ORDERED that Eric L. Johnson of Kansas City, Missouri, shall continue his appointment as Receiver of the Receivership Entities with the full powers of an equity Receiver, subject to the provisions of this Order. The Receiver shall be solely the agent of this Court in acting as Receiver under this Order. The Receiver may also serve, and is specifically authorized to serve as, trustee or co-trustee of the Receiver Trust.

## IX. ADDITIONAL DUTIES AND AUTHORITY OF RECEIVER

IT IS FURTHER ORDERED that, to the extent not included in and in addition to the duties and powers of the Receiver identified in the TRO, Doc. 98, and his general receivership powers, the Receiver is directed and authorized to accomplish the following:

A.    Upon written confirmation from the Plaintiffs that the payments and transfers required by Sections IV.B through IV.E have been completed, Global Check Recovery, Inc., including its assets, will revert to Defendants Brandes and Graham. Upon the transfer, Global Check Recovery, Inc., shall no longer be deemed a Receivership Entity; provided, however, that to the fullest extent permitted by applicable law, the Receiver shall have no further obligations or liabilities with respect Global Check Recovery, Inc. After Global Check Recovery leaves the Receivership, Brandes and Graham, on behalf of Global Check Recovery, Inc., and the Receiver shall cause Global Check Recovery to negotiate a mutual release of all claims, if any exist, that Global Check Recovery, the Receiver, the Receivership Entities, or their agents, may have against one another relating to this action that arose, accrued, or existed prior to the entry of this Order including any and all claims, liabilities, and obligations arising out of or relating to Global Check Recovery, Inc. except that the Receiver shall not release and Global Check Recovery, Inc. shall indemnify and hold the Receiver, the other Receivership Entities, and the Receivership Estate

Page 16 of 32

harmless from, against, and in respect to claims that (1) arose during the period of time in which Global Check Recovery, Inc. maintained operations after entry of the TRO, but only to the extent such claims arose from acts or omissions on the part of Defendant Graham and/or Kelsey Ghoulson while Global Check Recovery, Inc. was a designated Receivership Entity; and/or (2) are related to any federal, state or local net income, alternative or add-on minimum tax, gross income, gross receipts, sales, use, ad valorem, franchise, property (real or personal), profits, withholding, payroll, employment, unemployment, excise, stamp or occupation tax and other taxes, fees, charges and assessments of any kind, together with interest and penalties thereon. Subject to the indemnification provisions in this Section IX.A, Global Check Recovery, Inc., Defendants Brandes and Graham, and the Receiver, shall reasonably cooperate, to the extent reasonably requested by any other party, with regard to tax matters, including in connection with the preparation, execution and filing of tax returns. Any dispute between the Receiver and Defendants Brandes and Graham as to what constitutes an asset of Global Check Recovery, Inc. shall be determined by this Court upon motion by either the Receiver and/or Defendants Brandes and Graham.

B.      Suspend business operations, wind down, and marshal and liquidate the assets of the remaining Receivership Entities and any property transferred to the Receiver or the Receiver Trust pursuant to this Order. Provided, however, the Receiver shall not sell, rent, disclose, use, or receive any benefit from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Defendant obtained prior to entry of this Order, except that customer information need

not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

C.     Waive and release any claim the Receiver may have against any Individual Defendant or Montelago Marketing, Inc. that arose, accrued, or existed prior to the entry of this Order and such release shall not include any non-compliance with this Order.

D.     Waive and release any claim the Receiver may have against funds held for the benefit of any Receivership Entity in Graves Garrett LLC and Kennyhertz Perry trust accounts.

E.     Receive reasonable compensation for the performance of duties undertaken pursuant to this Order and the TRO, and for the cost of actual out-of-pocket expenses incurred by him or any professionals and other persons employed by him.   The Receiver shall file with the Court and serve on the parties requests for the payment of reasonable compensation and expenses no fewer than every 60 days after entry of this Order.   The Receiver's compensation and expenses are to be paid solely from assets of the Receivership Entities or from the Receiver Trust.

F.     Within 90 days after entry of this Order, file with the Court and serve on the parties an interim accounting and report describing the assets and wind-down of the remaining Receivership Entities, liquidation of assets and properties, and the scope of the Receiver's activities.

G.     Within 180 days after entry of this Order, file with the Court and serve on the parties a final accounting, report, and request for compensation.   Any party or the Receiver may request that the Court extend this deadline for good cause.   After the Court has approved the Receiver's final request for compensation, the Receiver shall transfer to the Commission all dominion, title, and control of the remaining Receivership Entities' remaining assets, in partial satisfaction of the monetary judgment contained in Section IV.A of this Order, to be distributed as provided in

Section VI.E.   After such transfer, the Receiver shall dissolve the Receivership Entities, the Receivership shall terminate, and the Receiver shall be discharged.

   H.   Prepare and execute any and all documents and contacts, and to perform any and all acts that are necessary to fulfilling Receiver's duties, including preserving, protecting, maintaining, operating, managing, and controlling the assets of the Receivership Entities and/or the Receivership Estate.

   I.   Open new bank accounts or utilize existing Receivership Entities' bank accounts for receivership funds relating to the Receivership Estate, and the Receiver's administration of the Receivership Estate and obtain separate or additional tax payer identification numbers, to the extent necessary and appropriate.

   J.   Operate, manage, control, and conduct the Receivership Estate and take any and all other actions with respect to the Receivership Entities and the Receivership Estate, to the extent such actions are related to the administration and/or liquidation of the Receivership Estate and the Receiver Trust, as the Receiver reasonably deems necessary and prudent in his reasonable business judgment in order to preserve, protect, and liquidate the Receivership Estate, and to maximize the value of the Receivership Estate, which may include, but is not limited to, the following:

   1.   Expending any cash or other income generated from the Receivership Estate or the Receivership Trust estate necessary to preserve and protect the property of the Receivership Estate;

   2.   Paying for maintenance, operating expenses, and taxes;

   3.   Prosecuting and defending, and when appropriate, settling legal actions in respect of the Receivership Entities and Receivership Estate that are not otherwise released waived or prohibited under this Order;

4. Employing those person(s) or firm(s) necessary to collect, manage, maintain, improve, process, prosecute, sell, or lease real or personal property, with the costs of such employment to be paid out of the Receivership Estate including, without limitation any listing agreements with sale agents or brokers;

5. Employing attorneys, accountants, investigators, consultants, and any other persons or entities deemed necessary to assist the Receiver in the discharge of the Receiver's duties under the TRO and this Order, (each of whom may hereinafter be referred to as a "professional") with the costs of such services to be paid out of the Receivership Estate, so long as the fees charged for such services are usual and customary;

6. Purchasing goods and services as the Receiver deems necessary and advisable to assist it in performing its duties hereunder and to pay therefore at the ordinary and usual rates and prices;

7. Subject to the limitations set forth in Section IX.B related to customer information, and subject to any agreement between the Receiver and any party regarding the disposal or transfer of other corporate records, transferring, disposing of, storing, selling and/or abandoning any tangible and intangible assets of the Receivership Estate, including licenses, accounts, inventory, equipment, real property, leasehold interests, trade secrets, trade processes, trademarks and other intellectual property, and business lines; provided, however, that the Receiver shall be required to (a) consult with the Plaintiffs as to the procedures that the Receiver intends to employ in marketing the property and conducting the disposition of the property, and (b) obtain Plaintiffs' written consent to the disposition of the property; provided

further, however, that if an agreement cannot be reached related to the Receiver's proposed procedures and/or to the disposition of the property, the Receiver must obtain prior approval of the proposed procedures from this Court;

8.  Entering into or modifying contracts affecting any part or all of the Receivership Estate, including, without limitation, employment contracts, independent contractor agreements, leases, and service agreements;

9.  Applying for, obtaining, and paying any reasonable fees for lawful license, permit or other governmental approval relating to the Receivership Entities and the Receivership Estate;

10. Confirming the existence of and, to the extent permitted by law, exercising the privileges of any existing license or permit; and doing all things necessary to protect and maintain such licenses, permits and approvals, subject to the further provisions of this Order; and

11. Presenting a certified copy of this Order and the TRO as proof of the Receiver's authority hereunder.

K.  Nothing in this Order shall preclude the Receiver from hiring professionals and third-party providers or vendors to assist the Receiver in the performance of the Receiver's duties under this Order or the TRO, so long as the fees charged for such services are usual and customary in the locality where the services are to be found.

L.  The Receiver shall be empowered to serve as "Manager" of the Receivership Entities and the Receivership Estate, and shall be authorized to take any action necessary to perform its duties as Manager of the Receivership Entities and Receivership Estate including, without limitation, executing any required titles, deeds, bills of sale, or similar documents.

M.      For the avoidance of doubt, the Receiver is hereby authorized to (1) execute and file any required federal, state, and local tax return on behalf of the Receivership Entities; and (2) to take all necessary and prudent steps to terminate any 401(k) plan held by the Receivership Entities.

N.      The Receiver shall have no duty to remediate any environmental issue with respect to any real property that is part of or under control of the Receivership Estate and shall be held harmless by the Receivership Entities with respect to such issues.

O.      The Receiver is further empowered and authorized to generally do such other things as may be necessary or incidental to the specific powers, directions, and general authorizations set out in this Order, the TRO, and/or any other applicable law, and further may take actions relating to the Receivership Entities and the Receivership Estate beyond the scope contemplated by the provisions set forth above; provided, however, that the Receiver must obtain prior approval from this Court for any actions beyond the scope contemplated herein.

IT IS FURTHER ORDERED that the Receivership Estate shall be able to remain in possession of and may have the use of the real property located at 17-21 NE Skyline Drive in Lee's Summit, Missouri, having the following legal description:

> Summit North Business Park – Lot 2
> Parcel: 52-910-13-02-00-0-00-000

and any structures, fixtures, and appurtenances thereto ("**Lee's Summit Property**") without any lease or rental obligation until March 1, 2019; provided, however, the Receivership Estate shall maintain the Lee's Summit Property in the same state of repair and condition as such property was in as of the entry of this Order and be responsible for costs related to utilities, insurance and routine maintenance such as cleaning, landscaping, mowing, snow removal, and garbage and refuse

removal during the time in which the Receivership Estate is in possession of the Lee's Summit Property. Beginning March 1, 2019 or the date of the Order whichever is later, if the Receivership Estate is still in possession of the Lee's Summit Property, then at that time the Receivership Estate will also be responsible for the monthly mortgage payment associated with the Lee's Summit Property (not to exceed $3,300 per month) for each full calendar month it remains in possession of the Lee's Summit Property; provided, however, if the Receivership Estate is still in possession on March 1, 2019 or the date of the Order whichever is later and the delay is attributable to A&B Partners, LLC or Defendants then the Receivership Estate shall not be responsible for the monthly mortgage payment. The Receivership Estate's use and occupancy of the Lee's Summit Property may not last longer than 180 days after the entry of this Order; provided, however, the Receiver is authorized to negotiate with A&B Partners, LLC such different and further terms related to the continued use and occupancy of the Lee's Summit Property, as may be approved by the Court, and will reasonably cooperate with A&B Partners, LLC's efforts to rent out the Lee's Summit Property to other potential third party tenants. The Receivership Estate's expenses and payments as contemplated herein shall be prorated commensurate with the portion of the Lee's Summit Property the Receivership Estate is in actual possession to the extent that A&B Partners, LLC allows for the use, rent, occupancy, or otherwise of a portion of the Lee's Summit Property by Global Check Recovery, Inc. or any entity or person that is not a Receivership Entity.

IT IS FURTHER ORDERED that the Receiver shall be able to store assets of the Receivership Estate at the real property located at 4-12 NE Skyline Drive in Lee's Summit, Missouri, having the following legal description:

> Summit North Business Park – Lots 1-8
> Parcel: 52-910-07-11-00-0-00-000

and any structures, fixtures, and appurtenances thereto ("**Storage Facility**") without any lease or rental obligation until March 1, 2019; <u>provided, however</u>, the Receivership Estate shall maintain the Storage Facility in the same state of repair and condition as such property was in as of the entry of this Order and be responsible for costs related to utilities during the time in which assets of the Receivership Estate are being stored at the Storage Facility. In addition to utilities, the Receivership Estate shall be responsible only for the insurance covering the assets of the Receivership Estate stored in the Storage Facility. A&B Partners, LLC shall be responsible for all other costs and expenses related to the Storage Facility. If the Receivership Estate is still in possession of the Storage Facility after March 1, 2019, then at that time the Receivership Estate will also be responsible for a monthly rental payment to A&B Partners, LLC for the first full month it continues to store assets of the Receivership Estate at the Storage Facility. The initial monthly rental payment shall be the monthly mortgage payment associated with the Storage Facility (not to exceed $4,300 per month) and will increase by $1,000 for each additional month the Receivership Estate continues to store assets at the Storage Facility; <u>provided, however</u>, the maximum rental amount shall not exceed $7,500 per month and if the Receivership Estate is still in possession on March 1, 2019 or the date of the Order whichever is later, and the delay is attributable to A&B Partners, LLC or Defendants then the Receivership Estate shall not be responsible for the monthly mortgage payment. The Receivership Estate's use and occupancy of the Storage Facility may not last longer than 120 days after the entry of this Order; provided, however, the Receiver is authorized to negotiate with A&B Partners, LLC such different and further terms related to the continued use and occupancy of the Storage Facility, as may be approved by the Court and will reasonably cooperate with A&B Partners, LLC's efforts to rent out the Storage Facility to other potential third party tenants. The Receivership Estate's expenses and

payments as contemplated herein shall be prorated commensurate with the portion of the Storage Facility the Receivership Estate is in actual possession to the extent that A&B Partners, LLC allows for the use, rent, occupancy, or otherwise of a portion of the Storage Facility by Global Check Recovery, Inc. or any entity or person that is not a Receivership Entity.

IT IS FURTHER ORDERED that Anderson and Brandes, on behalf of A&B Partners, LLC, and the Receiver shall cause A&B Partners, LLC to negotiate a mutual release of all claims, if any exist, that A&B Partners, LLC, the Receiver, the Receivership Entities, or their agents, may have against one another, relating to this action that arose, accrued, or existed prior to the entry of this Order including any claims related to the use and occupancy of the Lee's Summit Property or the Storage Facility.

## X.  NON-INTERFERENCE WITH THE RECEIVER

IT IS FURTHER ORDERED that Defendants, the Receivership Entities (other than the Receiver Trust), such parties' officers, agents, employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and any other person served with a copy of this Order, are hereby restrained and enjoined from directly or indirectly:

A.      Interfering with the Receiver's efforts to manage, or take custody, control, or possession of, the assets or documents subject to the receivership or any trust contemplated by this Order;

B.      Transacting any of the business of the Receivership Entities;

C.      Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody

of, or in which an interest is held or claimed by, the Receivership Entities (including the Receiver Trust); or

D.     Refusing to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

## XI.   STAY OF ACTIONS

IT IS FURTHER ORDERED that, except by leave of this Court, during the pendency of the continued receivership ordered herein, Defendants, the Receivership Entities, A&B Partners, LLC, BAM Marketing Group, LLC and such parties' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order and all investors, creditors, stockholders, lessors, customers and other persons seeking to establish or enforce any claim, lien, right, or interest against or on behalf of Defendants, A&B Partners, LLC, BAM Marketing Group, LLC, or the Receivership Entities, and all others acting for or on behalf of such persons (other than the Receiver and the Receiver's duly authorized agents), are hereby enjoined from taking action that would interfere with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Entities or the Receivership Estate, including, but not limited to:

A.     Filing or assisting in the filing of a petition for relief under the Bankruptcy Code, 11 U.S.C. § 101 et seq., or of any similar insolvency proceeding on behalf of the Receivership Entities;

B.     Commencing, prosecuting, or continuing a judicial, administrative, or other action or proceeding against the Receivership Entities or Receivership Estate, including the issuance or employment of process against the Receivership Entities or the Receivership Estate, except that such actions may be commenced if necessary to toll any applicable statute of limitations; or

C.     Filing or enforcing any lien on any asset of the Receivership Entities or Receivership Estate, taking or attempting to take possession, custody, or control of any asset of the Receivership Entities or the Receivership Estate; or attempting to foreclose, forfeit, alter, or terminate any interest in any asset of the Receivership Entities or Receivership Estate, whether such acts are part of a judicial or non-judicial proceeding, are acts of self-help, or otherwise.

Provided, however, that this Order does not stay: (1) the commencement or continuation of a criminal action or proceeding; (2) the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; (3) the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or (4) the Receiver from executing his powers and duties as set forth in this Order and the TRO.

## XII.   ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that the Defendants obtain acknowledgments of receipt of this Order:

A.     Each Defendant must, within 7 days after entry of this Order, submit to the Plaintiffs an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.     For 5 years after entry of this Order, each Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly, and each Corporate Defendant, must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for conduct related to the subject matter of the Order and all agents and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in Section XI.  Delivery must

occur within 7 days after entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## XIII.   COMPLIANCE REPORTING

IT IS FURTHER ORDERED that the Defendants make timely submissions to the Commission:

A.      One year after entry of this Order, each Individual Defendant and Defendant Montelago Marketing, Inc., must submit a compliance report, sworn under penalty of perjury:

1. (a) identifying the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of either Plaintiff may use to communicate with that Defendant; (b) identifying all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describing the activities of each business, including but not limited to the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which the Individual Defendants must describe if they know or should know due to their own involvement); (d) describing in detail whether and how that Defendant is in compliance with each applicable Section of this Order; and (e) providing a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2. Additionally, each Individual Defendant must: (a) identify all of their telephone numbers and all physical, postal, email and Internet addresses, including all of their residences; (b) identify all of their business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.     For 15 years after entry of this Order, each Individual Defendant and Montelago Marketing, Inc., must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1. any designated point of contact; or

2. the structure of any Corporate Defendant or any entity in which the Defendant has any ownership interest or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

Additionally, each Individual Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest and over which Defendants have direct or indirect control, and identify the name, physical address, and any Internet address of the business or entity.

C.     Each Individual Defendant and Montelago Marketing, Inc., must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.     Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.   Executed on:  _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.     Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC   20580.   The subject line must begin: *FTC v. Next-Gen,* Matter No. X180023.

F.     The Commission may provide any submissions made pursuant to this Section to the Office of the Missouri Attorney General, without providing any notice to the Defendants.

## XIV.   RECORDKEEPING

IT IS FURTHER ORDERED that the Individual Defendants and Montelago Marketing, Inc., must create certain records for 15 years after entry of this Order, and retain each such record for 5 years.   Specifically, Montelago Marketing, Inc., and each Individual Defendant for any business that such Defendant, individually or collectively with any other Defendant, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.     Accounting records showing the revenues from all goods or services sold;

B.       Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.       Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.       All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.       A copy of each unique advertisement or other marketing material.

## XV.   COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring the Defendants' compliance with this Order, including the financial representations upon which part of the judgment was suspended and any failure to transfer any assets as required by this Order:

A.       Within 14 days of receipt of a written request from a representative of either Plaintiff, each Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.   The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.        For matters concerning this Order, the Plaintiffs and the Receiver are authorized to communicate directly with each Defendant to the extent that the particular Defendant's attorney-client relationship with undersigned counsel has terminated.   The Defendants must permit representatives of the Commission or the State of Missouri to interview any employee or other

person affiliated with any Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C.    The Plaintiffs may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to the Defendants or any individual or entity affiliated with the Defendants, without the necessity of identification or prior notice.   Nothing in this Order limits the Commission's lawful use of compulsory process pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, or the State of Missouri's lawful use of compulsory process under applicable state law.

D.    Upon written request from a representative of the Commission or the State of Missouri, any consumer reporting agency must furnish consumer reports concerning Individual Defendants, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1).

## XVI.   RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**IT IS SO ORDERED.**

Date:    February 13, 2019                    /s/ Greg Kays
                                                            GREG KAYS, JUDGE
                                                            UNITED STATES DISTRICT COURT